### SIMON BROWN v. THE STATE.

#### No. 4097. Decided March 20, 1909.

**1.—Perjury—Justice of the Peace—Jurisdiction—Constitutional Law.**

A justice of the peace has no authority. as such to act out of his precinct and in the precinct of another justice of the peace hold a court of inquiry.

**2.—Same—Court of Inquiry.**

A justice of the peace of one precinct can not go into the precinct of another justice of the peace and issue process in that precinct and institute and hold a court of inquiry under article 941, Code Criminal Procedure; especially where

there is a resident authorized and qualified justice of the peace in said latter precinct.

**3.—Same—Examining Trial—Magistrate.**

Where a justice of the peace is acting under article 941, Code Criminal Procedure, he is not sitting as a magistrate in an examining trial, but only in his capacity as justice of the peace ferreting out or attempting to ferret out crimes against unknown violators of the law.

**4.—Same—Examining Trial—Difference Between Magistrate and Justice of the Peace.**

A justice of the peace is not sitting as a magistrate until the accused is arrested and brought before him for an examining trial. The difference between the office of magistrate and that of justice of the peace presiding over a court of inquiry is decidedly marked and evident; and where he sits as an examining court in his own precinct, he is a magistrate and his jurisdiction is coextensive with the limits of his county. Following Hart v. State, 15 Texas Crim. App., 202, and other cases.

**5.—Same—Case Stated—Want of Jurisdiction—Perjury.**

Where upon trial for perjury it was shown that the justice of the peace before whom the alleged perjury was committed went into another justice's precinct in his county where there was a resident qualified justice of the peace, and there as justice of the peace held a court of inquiry in which such testimony was taken. Held that such visiting justice had no jurisdiction or authority to hold such court of inquiry, and such testimony could not form the basis for perjury.

**6.—Same—Confession—Arrest—Impeachment.**

Upon trial for perjury it was reversible error to permit the State to introduce in evidence the verbal confessions of the defendant while under arrest, to impeach him; said confessions not being in writing and not otherwise in compliance with the Act of the Thirtieth Legislature, page 219.

Appeal from the District Court of Fannin. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of perjury; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*E. L. Agnew* and *McGrady & McMahon,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.—Cited cases in the opinion.

DAVIDSON, Presiding Judge.—This conviction was for perjury, the punishment assessed being three years confinement in the penitentiary.

The evidence shows that on December 3, 1906, G. W. King was justice of the peace of precinct No. 3, of Fannin County, and that he, together with the assistant county attorney, sheriff, with deputies, and the county attorney of Lamar County, went into justice precinct No. 4, of said Fannin County, where there was a resident qualified justice of the peace, and that said King issued subpoenas for witnesses under authority of article 941 of the Code of Criminal

Procedure, and had said witnesses brought before him for the purpose of inquiring into violations of the law. While testifying before said King, appellant stated, "I never saw any card playing or craps in any room above Jim Lewis' frosty joint, and I have not seen a game of poker or crap game around or in Ladonia for three or four years, at least it has been more than one year." Perjury was assigned against appellant upon his testimony before said King. As above stated, the evidence is that King was the duly elected and qualified justice of the peace in precinct No. 3; that he went into precinct No. 4, where there was a resident qualified justice of the peace, and held a court of inquiry; and it is further shown that the justice of precinct No. 4 was in no way disqualified from holding said court of inquiry, or sitting in regard to these matters. The commissioners court had designated Ladonia as the seat of justice, or place for holding the justice court for said precinct No. 4.

Appellant was brought before said King by a deputy sheriff and held in custody from the time he was supposed to have been summoned before said King, until indicted by the grand jury. The contention is made that King, as justice of the peace, had no jurisdiction or authority to act as justice of the peace or preside as such over a court of inquiry in precinct No. 4, inasmuch as there was a resident justice of the peace, who was a qualified justice of precinct No. 4, and was in no way disqualified to act in such investigation. We are of opinion this contention is sound. A justice of the peace has no authority as such to act out of his precinct and in the precinct of another justice of the peace. Article 5, sections 18 and 19, of the Constitution, provide there shall be not less than four nor more than eight justices of the peace in and for each organized county in this State, unless there should be a city of eight thousand or more inhabitants, in which case there may be two justices elected for such city. It further provides that the County Court then in existence should make the first division, and all subsequent divisions should be made by the commissioners court, as provided by the Constitution. Further provisions of the Constitution provide for the jurisdiction, criminal and civil, of such justices of the peace, and that they shall hold their courts at such times and places as may be provided by law. In obedience to these provisions of the Constitution, the Legislature provided, among other things, for the election of justices of the peace in these respective justice precincts and to fill vacancies in case of such occurrence. Article 1564, of the Revised Statutes, provides, "Each justice of the peace shall be commissioned as justice of the peace of his precinct and ex-officio notary public of his county, and shall take the oath of office prescribed in the Constitution and give the bond prescribed by law." Article 1565 provides: "Where any vacancy shall occur in the office of a justice of the peace, the same shall be filled by some person appointed by the commissioners court of the county, who shall hold his office until

the next general election, and until his successor shall be elected and qualified." Article 1566 provides: "During the period of such vacancy, or whenever the justice of the peace in any precinct shall be absent or unable or unwilling to perform the duties of his office, the nearest justice of the peace in the county may perform the duties of the office until such vacancy shall be filled, or such absence, inability or unwillingness shall cease." This seems to be the extent of the law with reference to the authority of the justice of the peace as enacted by the Legislature, except as coroner and magistrate.

Article 941 of the Code of Criminal Procedure is in the following language: "When a justice of the peace has good cause to believe that an offense has been, or is about to be, committed against the laws of this State, he may summon all and examine any witness or witnesses in relation thereto; and if it shall appear from the statement of any witness or witnesses that an offense has been committed, the justice shall reduce said statements to writing, and cause the same to be sworn to by the witness or witnesses making the same, and thereupon such justice shall issue a warrant for the arrest of the offender, the same as if complaint had been made out and filed against each offender."

These are the provisions in the Constitution and statutory enactments in regard to the power and jurisdiction and authority of justices of the peace. It is a well settled proposition that the jurisdiction and power and authority of justices of the peace are such only as are fixed by the Constitution and statutes. In some of the States their jurisdiction is coextensive with the limits of their respective counties, while in others it is confined to their townships, district, wards, precincts or hundred, and it is a general rule that any exercise of jurisdiction by a justice of the peace beyond his prescribed power is *coram non judice and void.* See Dew v. State Bank, 9 Ala., 323; Caldwell v. Meadow, 4 Ala., 755; Gage v. Maschmeyer, 72 Iowa, 696; State v. Brayman, 35 Kan., 714; Russell v. Muldraugh's Hill, etc., 13 Bush., 307; Hebel v. Amazon Insurance Co., 33 Mich., 400; Hartford F. Insurance Co. v. Owen, 30 Mich., 441; U. S. Mutual Ins. Co. v. Reisinger, 43 Mo. App., 571; People v. Campbell, 22 Hun, 574; Searl v. Shanks, 9 N. D., 204; Neville v. Morgan, 10 Phil., 522; Ledbetter v. Kendall, 15 Federal Cases, 8157a, 302; Martha Ane, 16 Federal Cases No. 9146, Olcott, 18. See also 24 Vol. "Cyc.," 484 and 485. The same rule obtains in this State. See Foster v. McAdams, 9 Texas, 542; see. also 29 S. W. Rep., 102; Horan v. Wahrenberger, 9 Texas, 313; Stewart v. Smallwood, 102 S. W. Rep., 159, and Peacock v. State, 37 Texas Crim. Rep., 418. The justice has also authority to sit as a magistrate, but this is entirely distinct from his jurisdiction as justice of the peace. Code. Crim. Proc., arts. 41 and 62; Kerry v. State, 17 Texas Crim. App., 178.

Another proposition is that ordinarily one justice has no authority

to take cognizance of proceedings within the jurisdiction of another justice; but in some States other justices, usually the nearest, is given jurisdiction over proceedings within the jurisdiction of another justice who has resigned or is disqualified, absent, or is some way legally disabled, but these statutes are to be strictly construed, and will not be extended to cases clearly not within their terms, and where by statute certain proceeding must be had before a proper justice, no other justice can take jurisdiction. See vol. 24 Cyc. 493, and notes 85, 86, 87 and 88 for collated authorities. It is also settled that one justice of the peace, as such, can not sit in the precinct of another justice even when the other justice is absent. See Stewart v. Smallwood, 102 S. W., 159. In no case can he take jurisdiction or cognizance of matters arising in another precinct where there is a resident justice of the peace capable of acting. Stewart v. Smallwood, supra; Horan v. Wahrenberg, supra; Moss v. State, 47 Texas Crim. Rep., 459, 11 Texas Ct. Rep., 763; Pyles v. State, 47 Texas Crim. Rep., 435, 11 Texas Ct. Rep., 732; Liggett v. State, 47 Texas Crim. Rep., 450, 11 Texas Ct. Rep., 764, and Wilson v. State, 27 Texas Crim. App., 47. The three cases supra, cited from the Texas Court Reporter, arose in regard to whether the jurisdiction of the mayor's authority extended beyond his territorial limits. It was held where the case arose outside such limits, perjury assigned upon testimony delivered during the trial before the mayor, could not afford the basis of a prosecution because of want of jurisdiction on the part of said officer to try such cases; that his action was coram non judice. The latest utterance in regard to this matter is the case of Stewart v. Smallwood, supra. We quote from that case:

"It is not disputed that John Fitzgerald, justice of the peace for precinct No. 1, of Fannin County, was absent at the time of filing this suit and the issuance of the writ of attachment, and that T. J. Self, the justice of the peace of precinct No. 8, was the nearest justice of the peace in Fannin County. It is contended in argument that when the justice of the peace is absent from his precinct, the nearest justice in the county has jurisdiction of all the cases which may be brought in the precinct of such absent justice, but such nearest justice can not go out of his precinct and issue process and make the same returnable to the court of the absent justice, but should make the same returnable to the court of said nearest justice of the peace. In other words, that there is no law authorizing a justice of the peace to go out of his precinct and issue process in another jurisdiction and make it returnable to that jurisdiction. We are of opinion that the intention of this statute is, in the case of the absence of the justice of the peace, to authorize and confer jurisdiction on the nearest justice of the peace in the county to perform the duties of such absent justice. The statute, however, does not confer power upon such nearest justice to go outside of

his precinct and to the office of such absent justice and there per-
form such duties, but contemplates that the duties shall be performed
in the precinct of such nearest justice.     Crawford v. Saunders, 9
Texas Civ. App., 225." If this is correct, and it follows the au-
thorities in this State from the beginning, and if the justice of one
precinct can not go into the precinct of another justice of the peace
and issue process in that precinct returnable before another justice,
then the reasoning is infinitely stronger why the neighboring justice
can not go into the domain of an adjoining or other justice precinct
where there is a resident authorized and qualified justice of the
peace, and institute or hold courts of inquiry under Code Criminal
Procedure, article 941.    The visiting justice of the peace would have
no such authority under any provision of law in Texas.    This con-
struction of our constitutional and legislative provisions seems to have
been followed from practically the beginning of our jurisprudence.
We are not discussing how far the Legislature may go in fixing the
territorial jurisdiction of justices of the peace.    We are only dis-
cussing the statutes as we find them enacted.

We have only been discussing the authority of a justice of the
peace as such, and acting in the capacity of justice of the peace
holding courts of inquiry under article 941, Code Criminal Procedure,
but such officer is presented in another light which we have not been
discussing.   But that matter is not involved in this case, if at all,
in an indirect or negative way, but will notice it as it may be so
involved, that is, that such officer is as well clothed with authority
to act as magistrate as justice of the peace, and that as magistrate
he may hold an examining trial which, as justice of the peace, he
can not.   There is no contention, however, and no fact going to
show that the justice of the peace in this case was acting in · the
capacity of magistrate.   On the contrary, the uncontroverted facts show
that he was acting only as justice of the peace, carrying on what
may be termed a court of inquiry under and by virtue of article
941, Code of Criminal Procedure, supra.   In other words, he was
summoning before himself, as *justice of the peace,* witnesses solely
for the purpose and only with the view of ascertaining if any crimes
or violations of the law had been committed in the neighboring
precinct into which he had gone, and it may be presumably with
the further view, if the witnesses summoned before him in the court
of inquiry developed any violations of the law, of having them to
make affidavit for the arrest of such discovered violators or offenders.
He had no case before him; he was investigating as justice of the
peace, with a view and for the purpose of finding or procuring or
originating a case or cases.   He was, therefore, not sitting as a
magistrate in an *examining trial,* but only in his capacity as *justice
of the peace,* ferreting out or attempting to ferret out crimes against
unknown violators of the law.   Our laws have clothed the justice of

the peace with varied duties and powers, not only as justices of the peace, but as magistrates, coroners and notaries public, and they have been assigned different relations, different duties, and the power and authority of such justices in each of these relations is different and entirely distinct from what it is in all of the other relations. As justice of the peace, he may discharge certain duties, and, in fact, is required to discharge them *as justice of the peace, and not as notary public; as a notary public,* certain duties *as notary public* and not *as justice of the peace.* So, *as coroner,* and so *as magistrate.* The Legislature has authority to pass laws investing the justice of the peace with these various duties and power, and to separate one from the other and have so done. As magistrate he may hold an examining trial, reduce testimony to writing, remand parties to jail, discharge them, admit them to bail to await the action of the grand jury, etc. As notary public he could not; as justice of the peace he could not. As magistrate, however, he could. Code Criminal Procedure, article 41; Kerry v. State, 17 Texas Crim. App., 178. It has been held that the testimony taken before such magistrate sitting as an examining court may be used in subsequent trials under certain circumstances when the witness or witnesses have departed this life or have left the State, but this rule would not apply to evidence of a witness in a court of inquiry for manifest reasons. Code Criminal Procedure, article 24; Kerry v. State, 17 Texas Crim. App., 178; Childers v. State, 30 Texas Crim. App., 160. Among others, the accused is not at the court of inquiry; he is not accused of any offense; he has not been arrested, nor has he been confronted with the witness. At the examining trial he has been arrested and is confronted with the witnesses against him. In the examining court he must answer; at the court of inquiry he is not even accused; is absent and can not answer; he is not called upon to answer any accusation. At the court of inquiry, if the evidence of the witnesses summoned before the justice of the peace develop a sufficient case to authorize it, an affidavit is taken, a warrant of arrest issued, accused taken into custody, brought before the court for examination, and the witnesses are then called to face the accused in such examining trial. The justice of the peace is then, and not till then, a magistrate. So the difference between a court of inquiry and an examining court has a wide range of demarkation, and the justice of the peace sits in entirely different capacities in the two characters of duty.

Again, all judges of Courts of Appeal, District Courts, County Courts and justices of the peace are magistrates. Code Criminal Procedure, article 41. It would hardly be contended that as a magistrate these judicial officers could issue writs of habeas corpus. If so, then a justice of the peace, by virtue of his office as a magistrate, would have as much authority to issue a writ of habeas corpus as a district judge, judge of the Court of Criminal Appeals, or judge on the

Supreme Bench. It would not seriously be asserted that justices of the peace can issue writs of habeas corpus, and yet, under the statute, there seems to be no distinction in the office of magistrate between the justice of the peace and any of the higher or more elevated judicial officers. A writ of habeas corpus can only be issued where a judge has a right to do it—first, as a court; second, as a judge; and this may be in vacation, but never can it be issued by a *magistrate* as such. The Court of Criminal Appeals, as a court, has authority to issue writs of habeas corpus, and each member of the court is clothed with authority to grant writs of habeas corpus. Each member of the court is a magistrate under our law, and so defined in the same article of the statute with the justices of the peace. *As a magistrate, however, it would not be asserted that any member of this court could issue a writ of habeas corpus. Until a very recent date the Supreme Court and its members could not issue or grant writs of habeas corpus; but this authority was conferred by the Legislature recently; but at all times prior to such recent legislation, the members of that court have been magistrates, and could sit as such, but could not issue writs of habeas corpus. They could, however, as magistrates hold examining trials. So then, the official character of a magistrate is as distinct as the law can make it from any other official character pertaining to judicial officers, or the discharge of any other official duty involved upon such officer. And this is true from the justice of the peace upward to the most elevated judicial officer in Texas. The Legislature has exercised its authority in prescribing the duties of the justice of the peace in such relations as deemed proper. In the discharge of these various duties will be found the limit of jurisdiction. It only remains with the courts to uphold such legislation. The case of Hart v. State, 15 Texas Crim. App., 202, and Childers v. State, 30 Texas Crim. App., 160, recognize the correctness of this position, as does Evans v. State, 12 Texas Crim. App., 370, and Kerry v. State, 17 Texas Crim. App., 178. In the Hart case the justice of the peace was sitting as a magistrate conducting an examining trial in a cause pending before him, wherein Hart was charged with assault to murder; was sitting in the precinct of which he was justice of the peace and taking the testimony as magistrate in an examining trial, as the statute directed, or authorized such magistrates to do when sitting as examining court. He was holding his examining trial in precinct No. 1 as magistrate and of which precinct he was presiding as justice of the peace. It became necessary in that case to go into a neighboring precinct to secure the testimony of the party who had been shot by Hart. He proceeded to the neighboring precinct and took the testimony of the wounded man, not as justice of the peace, nor as a court of inquiry, but strictly as magistrate conducting an examining trial. The opinion sustained this action of the magistrate as reported, supra.

So, in the Childers case, supra. In that case the district judge had granted a writ of habeas corpus. Evidence was adduced before him as such judge presiding over the trial had under the writ of habeas corpus. Later on, when Childers was upon final trial before a jury, the State sought to introduce the evidence taken before the district judge on the habeas corpus trial, and it was admitted; but on appeal the judgment reversed for this alleged error, on the ground that testimony taken before a judge sitting in a habeas corpus proceeding, could not be reproduced before the jury, because the statute limits the introduction of this character of evidence to depositions or testimony taken before a *magistrate,* and that the district judge sitting in a habeas corpus trial *was not sitting or acting as a magistrate.* See also Evans v. State, 12 Texas Crim. App., 370. These cases clearly draw the distinction between a judge acting as a judge on habeas corpus proceedings, and the same person or officer acting as a magistrate in an examining trial. So the difference between the office of magistrate and that of justice of the peace is decidedly marked and evident. It is as distinctly marked where the justice of the peace is acting as magistrate and where he is acting as justice of the peace, as is the difference in the authority of a district judge in a writ of habeas corpus and where the same judge is acting as magistrate.

Article 41, Code Criminal Procedure, provides who are magistrates as follows: "Either of the following officers is a 'magistrate' within the meaning of this Code: The judges of the Supreme Court, judges of the Courts of Appeals, the judges of the District Court, county judges of the county, either of the county commissioners, the justices of the peace, the mayor or recorder of an incorporated city or town." Article 42, Code Crim. Proc., clothes magistrates with authority to preserve the peace within their jurisdiction by the use of all lawful means, etc. Article 62, Code Crim. Proc., defines what it takes to constitute an examining court thus: "When a magistrate sits for the purpose of inquiring into a criminal accusation against any person this is called 'an examining court.'"

Wherever a justice of the peace sits as an examining court, it has been held his jurisdiction is coextensive with the limits of his county. Hart v. State, 15 Texas Crim. App., 202; Kerry v. State, 17 Texas Crim. App., 178. But this does not constitute such justice or judge a justice of the peace under the terms of article 941, supra. In Kerry's case, Judge White delivering the opinion of the court used the following language: "A justice of the peace is a 'magistrate.' (Code Crim. Proc., art. 41.) When a justice sits for the purpose of inquiring into a criminal accusation against any person, he sits not as a justice of the peace, but as a magistrate, and the court which he then holds is not a justice's, but an 'examining court.' (Code Crim. Proc., art. 62.) When holding such a court, his functions as a magistrate are the same as those of the judges of the

county, district, supreme or court of appeals, when they sit as magistrates to hold an examining trial. The same rules govern each." This decision very clearly draws the line and marks the distinction between a justice of the peace as such, and when he is acting under his authority as a magistrate. A magistrate can never act until he has a criminal action before him, and a criminal action must be prosecuted in the name of the State against the person accused and is conducted by some officer or person acting under the authority of the State in accordance with its laws. Article 60, Code Crim. Proc. Therefore, there must be a criminal action filed against the party before the *justice of the peace can act as magistrate.* This is not the condition under the terms of article 941, supra. Under the terms of the latter article, as before stated, the justice of the peace may inquire in regard to violations of the law in order to obtain a criminal action. Article 25, Penal Code, reads as follows: "The word 'accused' is intended to refer to any person who, in a legal manner, is held to answer for any offense, at any stage of the proceedings or against whom complaint, in a lawful manner, is made, charging the commission of an offense, including all proceedings from the order for arrest to the final execution of the law; and the word 'defendant' is used in the same sense." So it would seem from this that a defendant is not accused until he has been charged with an offense and he can not be tried until he has been arrested, and, therefore, a magistrate can not sit as an examining court or conduct an examining trial until he has the party under arrest and before him. Under art. 941, as justice of the peace, he may make inquiry as to violations of the law and after one has been discovered complaint may be taken, process issued and the arrest consummated, the prisoner brought before the court, and if he has not final jurisdiction over it, he can resolve himself into an examining court or magistrate, but a prior accusation must be filed before he can obtain jurisdiction of such party as magistrate. In the case in hand, therefore, we say that the justice of the peace had no authority to go into the neighboring precinct to hold a court of inquiry. He was not acting as a magistrate, and could not do so as justice of the peace. Again, would it be contended that a judge of this or the Supreme Court could as a magistrate institute courts of inquiry under art. 941, Code Criminal Procedure? Of course not. Why? Because the terms of that article limits the power to justices of the peace. They do not extend or include magistrates, county judges, district or higher judges.

There is another proposition in the case that would be fatal to the conviction independent of the jurisdictional matter. A bill of exceptions was reserved to the ruling of the court permitting the introduction of the confession of appellant while in jail, which seems to have been for the purpose of impeaching him while testifying in his own behalf. The bill, in substance, is as follows: That after

appellant had stated he did not remember making the statement upon which the perjury was based, the State's counsel then asked him for the purpose of impeachment, "Didn't you swear that (meaning the statements upon which the perjury is based) up there, and afterwards didn't you go before Mr. Lattimore and go before the grand jury of this county, and if you did not go before it and ask to go before it, and if you did not there state that Jim Lewis persuaded you to make the statement that is made here and you testified falsely and that you wanted to correct it and say that you saw the gambling from the start to finish," and counsel for defendant interrupted and asked the defendant the following question: "Were you under arrest at that time for this offense and in charge of an officer?" To which defendant replied, "Yes, sir;" and defendant then objected to said question and any answer thereto, because it was an attempt to get a confession before the jury that was not a legal confession, it not being in writing and signed by the defendant, and not showing that he had been warned by the person to whom the same was made; and because it was pretending to lay a predicate to impeach the defendant by illegal testimony, and quite a number of other objections; and it was further asked by said State's attorney, "And when you came up there if I didn't tell you this, 'Simon, I don't want you to make any statement before this grand jury; if you do make this statement it will be used as evidence against you and not for you; that it can not help you in your case,' and after I told you that, didn't you go ahead and make this statement. (The district attorney reading from a paper purporting to be the statements so made by defendant before the grand jury.) And tell the grand jury that you wanted to tell them what was right, that you had lied there and you wanted to go there and correct it?' Defendant answered, 'I don't remember.'" These statements were read from a paper by the district attorney to the witness before the jury. The jury heard them all as read from the paper and were evidently considered by them as evidence. They were not denied nor withdrawn, but left in that condition. No more dangerous way could be resorted to to secure consideration of illegitimate and harmful evidence. This was not right and ought not to have been permitted. This testimony was not admissible. The trial occurred on September 10, 1907, after the Act of the Thirtieth Legislature had gone into effect on the 12th of July, 1907. This act provides that where a party is under arrest and his confession is sought to be used against him, the party being under arrest, it must be shown that it was a voluntary statement taken before an examining court in accordance with law, or be made in writing and signed by him, which written statement shall show that he has been warned by the person to whom same is made; first, that he does not have to make any statement at all; second, that any statement made may be used in evidence against him on

his trial for the offense concerning which the confession is therein made, or unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to . establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed, provided, that where the defendant is unable to write his name and sign the statement by making his mark, such statement shall not be admitted in evidence, unless it be witnessed by some person other than a peace officer, who shall sign the same as a witness. See Act Thirtieth Legislature, pages 219-20. This law had been in effect sometime when this purported confession was sought to be used against appellant. . Evidently the legislative intent here enunciated is that confessions under the circumstances stated in this act shall exclude all verbal confessions except as provided in said act. The confession and statements here sought to be used and read to the jury are clearly outside of and not included within the provisions of said Act of the Legislature. Even before the last Act of the Legislature, this court had held that confessions of a party under arrest made without warning could not be used against him, even for the purpose of impeachment, citing Morales v. State, 36 Texas Crim. Rep., 234; Wright v. State, 36 Texas Crim. Rep., 427; Bailey v. State, 40 Texas Crim. Rep., 150; Rodriquez v. State, 36 S. W. Rep., 439; Walton v. State, 41 Texas Crim. Rep., 454, 55 S. W. Rep., 567; Parker v. State, 57 S. W. Rep., 668; Johnson v. State, 43 Texas Crim. Rep., 476, 66 S. W. Rep., 846. The Morales case overruled Quintana v. State, 29 Texas Crim. App., 401, which laid down a contrary rule.

Under the views enunciated above, it is unnecessary to discuss the remaining questions, though some of them seem to be well taken. As the case is presented to us, the judgment should be reversed and the cause remanded, and it is accordingly so ordered.

*Reversed and remanded.*

BROOKS, Judge (dissenting).—I believe that Hart v. State, supra, conclusively settles the case adversely to appellant.