## CENTRAL HIDE & RENDERING CO. OF WICHITA FALLS v. STOREY et al.

### No. 6456.

Court of Civil Appeals of Texas. Texarkana.

Sept. 8, 1949.

Rehearing Denied Oct. 6, 1949.

McDonald & Anderson, Wichita Falls, Lasseter, Spruiell, Lowry, Potter & Lasater, Tyler, for appellant.

Pollard, Lawrence & Reeves, Tyler, J. Byron Saunders, Tyler, for appellees.

WILLIAMS, Justice.

This suit was instituted by appellees in the District Court of Smith County against appellant for a mandatory and prohibitory injunction. The appellees who are resident citizens of Tyler, Texas, and whose homes are located near the appellant's plant (one-half mile to a mile) seeking an injunction against appellant on account of alleged obnoxious odors and flies emanating from its plant, and unsightly conditions around the plant, which substantially interfere with the comfort and enjoyment of their homes. Appellees owned their homes prior to the erection of the rendering plant. They alleged that offal and waste permitted to accumulate around the plant furnished a breeding place for flies and maggots and created a stench which reached their homes and seriously affected their enjoyment of them. The appellant joined issue with appellees and defended on the ground that it was not making an unreasonable use of its property considering its location and type of business; that its business was a useful one to Smith County; that if the condition exists in the community as charged by appellees, it is not solely produced by appellant but by others in the operation of businesses in the particular neighborhood and vicinity. Appellants allege further that there was a "large refinery, dumping grounds, hog pens, slaughter houses, horse and mule barns, dairies, cow pens, factories, cat and dog hospitals, and other similar businesses located in this community." The trial was to a jury on special issues, all of which were answered favorably to appellees and judgment was rendered for them perpetually enjoining appellant "from in any manner operating a rendering plant for the rendering of fatty acids from the bodies of dead animals, offal and refuse, and from the making of cakes of the residue of such material, and from dumping or depositing any refuse or materials upon its land adjacent to its plant."

Appellant's point one is: "The trial court erred in denying appellant's motion for an instructed verdict because the evidence showed conclusively that its rendering plant was a permanent installation in an industrial area on land which it owned, selected without negligence as the best place for the business, equipped with the best machinery, operated without negligence by skilled personnel, engaged in a

lawful essential·industry useful to the community, and therefore, appellees should be relegated to suit for damages rather than abatement, and the trial court abused its discretion in overruling said motion."

Points two, three and four, present substantially the same issue.

The evidence shows that appellees' homes are located adjacent to and in the vicinity of the rendering plant and that appellees were occupying said homes some years before the rendering plant was constructed. The rendering plant is used for cooking and extracting fats from dead animals which it collects from Smith County, such as hogs, cows and mules and from waste accumulations collected each twenty-four hours from packing plants in the City of Tyler. The rendering plant is located on a 10 acre tract of land purchased by it on the Old·Longview Road northeast of the City of Tyler. Appellees' testimony shows that on occasions, especially when the wind is from the plant toward the homes, a foul and sickening odor invades their homes and seriously affects their enjoyment of same; that large numbers of flies come from the plant and gather on the screen doors of their homes. Appellees' testimony shows further that on land adjacent to the rendering plant and another tract of land nearby, the appellant dumps large amounts of manure, raw bones, intestines and such like, which is a breeding place for flies. Some of the witnesses described the dumping grounds as being infested with many maggots, which condition, shown by some of their testimony, was present at the time of or shortly before the trial. On the other hand appellant's evidence showed that the plant was located on a tract of land carefully selected by it with the aid of certain persons of Tyler; that it had installed the very latest machinery; that the plant was being operated in a sanitary manner, according to the latest approved methods; that no obnoxious odors were being released from the plant; that the manure was being spread; and that there were no maggots or blow flies in evidence at the date of the trial and for some time prior thereto. Some of this evidence by appellant was from members of the State Health Department.

This testimony, in our opinion, clearly raises an issue of fact, as to whether appellant was making a reasonable or an unreasonable use of its premises. The jury found in answer to issue No. 9 that the rendering plant was making an unreasonable use of its premises, and that the disagreeable odor and flies complained of by appellees were not coming from sources other than appellant. In answer to other issues the jury found that in operating its plant appellant is producing an odor which is disagreeable to persons with ordinary sensibilities; that said odor recurs in the operation of said plant; that the production of such disagreeable odor substantially interferes with the enjoyment of appellees' homes; that in operating its plant appellant is causing to be maintained on its premises a breeding place for flies, which recurs in the operation of said plant, and substantially interferes with the enjoyment of appellees' homes; that the maintenance of such breeding place for flies constitutes a menace to the health of the appellees and their families.

Appellant insists that, granting the situation exists at the plant as shown by appellees' testimony, still they would not be entitled to the harsh writ of injunction requiring the closing and moving of the plant; but appellees should be relegated to a suit at law for damages to their persons and property. In support of its contention, appellant cites: Rainey v. Red River T. & S. Ry. Co., 99 Tex. 276, 89 S.W. 768, 3 L. R.A.,N.S., 590, 122 Am.St.Rep. 622, 13 Ann. Cas. 580; Galveston, H. & S. A. Ry. Co. v. De Groff et ux., 102 Tex. 433, 118 S.W. 134, 21 L.R.A.,N.S., 749; Stone v. City of Wilie, Tex.Com.App., 34 S.W.2d 842; King et al. v. Columbian Carbon Co., 5 Cir., 152 F.2d 636. We think the substance of the holding in the above cases applicable to appellant's contention is summarized by the following quotation from the case of Galveston, H. & S. A. Railway Co. v. De Groff [102 ·Tex. 433, 118 S.W. 139]: "Some one must suffer these inconveniences rather than that the public interest

should suffer. If the defendant were compelled to remove to another part of the city, the same nuisance to other people would be caused by the same necessary operation of the machinery, and the citizens at that point could with greater propriety than plaintiffs seek another injunction. These conflicting interests call for a solution of the question by the application of the broad principles of right and justice, leaving the individual to his remedy by compensation and maintaining the public interest intact. This works hardships upon the individual, but they are incident to civilization with its physical developments, demanding more and more the means of rapid transportation of persons and property. The plaintiffs should be left to their action for damages. The injunction should not have been granted."

As stated above, appellees' suit is one to permanently enjoin appellant from operating its rendering plant because the wrongful operation makes it a nuisance. There is no contention in either appellees' pleadings or proof that the rendering plant is a nuisance per se or that it is not a legitimate business. Absent flies and offensive odors appellees would have no complaint. So the question at once arises are appellees entitled to a permanent injunction restraining the operation of the rendering plant or must they pursue their legal remedy for damages to their property and health on account of the wrongful operation of the plant? If their legal remedy is as complete and efficient as the equitable one then they must pursue their legal remedy. Humble Oil & Refining Co. v. Luckel, Tex.Civ. App., 154 S.W.2d 155, writ refused. It is apparent from this record that any damages suffered by appellees, either personal or to their property, is easily ascertainable. Quoting again from Galveston, H. & S. A. Railway Co. v. De Groff, supra: " * * * It is a well-established principle which is recognized in the petition that the plaintiffs were not entitled to an injunction in this case if they had an adequate remedy at law; that is, if they could recover by a suit at law for the amount of the depreciation of the real estate and compensation for the decrease in the business of hotel keeping. It does not require authority nor argument to show that the decrease in the value of the real estate could easily be ascertained and could be compensated for in money. * * * "

It is also stated in King v. Columbian Carbon Co., 5 Cir., 152 F.2d 636, 641: " * * * The property of an individual may not be damaged for public use without just compensation, and assuredly it may not be damaged for private use without such compensation. As a concession to industrial progress and social utility the law will not abate a useful and lawful enterprise even though it be a nuisance, but further than that the law does not recede. It still requires payment for unwarranted, unreasonable, and substantial damage done to the property of another which is caused by the construction and operation, however skillful, of an industrial plant in a locality undevoted and unadapted thereto."

We have reached the conclusion then that appellees are not entitled under the facts and circumstances of this case to a permanent injunction prohibiting the operation of appellant's rendering plant for the reason that they have an adequate legal remedy for damages.

The judgment of the trial court is reversed and the permanent injunction is dissolved and this cause is here remanded to the trial court for trial in accordance with this opinion.

HALL, Chief Justice (dissenting on rehearing).

After further consideration and study of the record and applicable authorities. I have reached the conclusion that our original opinion is incorrect and that appellees' motion should be granted and the judgment of the trial court affirmed.

The statement of the nature of the cause of action in our original opinion is correct and I shall not add thereto. All issues of fact were found by the jury in favor of appellees. There is ample testimony in the record to sustain each finding by the jury.

Appellant, a private enterprise, set up shop in the community adjacent to appel-

84

lees' homes established prior to the erection of appellant's plant. Terrible stench and foul odors emanated from apellant's rendering plant, and entered appellees' homes which made them uninhabitable. The facts also showed that many maggots and flies were found upon appellant's premises. This condition was found by the jury to be recurring in nature and "substantially interfered with the enjoyment of their respective homes * * * by plaintiffs" (appellees).

Section 4 of Article 4642, Vernon's Annotated Civil Statutes, provides in part that an injunction may be granted where *"irreparable injury to real estate or personal property is threatened, irrespective of any legal remedy at law."* (Italics ours.)

The injury to appellees' health or the danger of some injury thereto and the deprivation of the use of their homesteads constitutes an irreparable injury. Stark v. Coe et ux., Tex.Civ.App., 134 S.W. 373, 377, writ refused, and cases there cited.

The same authority states further: "A person aggrieved by reason of a nuisance which seriously affects his health and life and the comfortable enjoyment of his home can call to his aid the equitable powers of the court to enjoin and abate the nuisance, and it makes no difference if the person causing the nuisance is financially responsible for the damage incurred."

See also Sumner v. Crawford, 91 Tex. 129, 41 S.W. 994; Mann v. Trinity Farm Co., Tex.Civ.App., 270 S.W. 923; Frisby v. Rockins, Tex.Civ.App., 105 S.W.2d 362; writ dismissed; Mid-Texas Petroleum Co. v. Colcord, Tex.Civ.App., 235 S.W. 710. In the very recent case of Landwer v. Fuller et al., Tex.Civ.App., 187 S.W.2d 670, 673, writ refused w. m., Chief Justice Pitts of Amarillo Court of Appeals has the following to say: "If irreparable injury to real estate or personal property is threatened, irrespective of any legal remedy at law, or, if the nuisance found to exist is of a recurring nature, an injunction to abate same will lie."

The above authorities in my opinion furnish sufficient authority for the affirmance of the judgment of the trial court.

To relegate the appellees to suits for damages growing out of the nuisance created by appellant, since the causes constituting the nuisance are of a recurring nature, would force them to be continually bringing suits against appellant for damages to their health and property caused by each wrongful act. On the other hand, the granting of an injunction to restrain the operation of said plant would settle the matter once and for all. Under a familiar rule of equity no person may so use his property as to injure the health and property of his neighbor, and certainly this would apply in this case where the appellees had their homes established before appellant came into their community. The authorities cited in the majority opinion have reference to public utilities and are not applicable to the facts in this case.

It is my opinion that the judgment of the trial court should be affirmed.