**GEORG et al. v. ANIMAL DEFENSE LEAGUE.**

No. 12096.

Court of Civil Appeals of Texas. San Antonio.

May 24, 1950.

Rehearing Denied June 21, 1950.

Adrian A. Spears, Walter P. Brenan, both of San Antonio, for appellants.

Clinton G. Brown, Jr., Harry Nass, E. G. Bradley, all of San Antonio, for appellee.

NORVELL, Justice.

Appellee, Animal Defense League, is a corporation organized under the laws of the State of Texas "for the charitable and benevolent purpose of preventing cruelty to animals, to promote humane and kind treatment of them, and to aid and assist by all legal and proper means the enforcement of the laws enacted and that may be enacted by the Legislature of this State for the prevention of cruelty to animals of every kind and nature."

As a part of its activities or functions, the League maintains an animal shelter where stray cats and dogs are cared for until such time as new homes may be found for them. If the animals be diseased or injured beyond hope of recovery they are destroyed and their suffering ended.

The League maintained an animal shelter located on the Zercher Road, about one and a half miles northeast of the city limits of San Antonio, Texas. Because of the growth of the city and the urbanization of the territory surrounding this location, the League's Board of Directors decided to abandon the Zercher Road location and purchased a 25-acre tract north of the city limits of San Antonio and east of U. S. Highway No. 81, connecting San Antonio with the City of Austin. The highway is commonly known as the Austin Road. Although the 25-acre tract is approximately the same distance from the city limits of San Antonio as the Zercher Road location, the surrounding area is not so highly urbanized.

Before the League commenced the construction of its proposed animal shelter upon the Austin Road property, the appellants, Alvin Georg and others, who own land in the vicinity, brought suit for an injunction to restrain the League from constructing and operating kennels and shelters upon the property. A temporary writ was granted and trial to a jury was had upon the application for a permanent injunction. The jury made the following special findings:

"Question No. 1: Do you find from a preponderance of the evidence that the barking, if any, of the dogs defendant intends to kennel on the property in question, in the manner and under the circumstances proposed by defendant, will materially annoy or disturb plaintiffs, or either of them, by interfering with their rest and comfort, or injuring their health? Answer: Yes.

"Question No. 2: Do you find from a preponderance of the evidence that the manner of use to which defendant intends to put the property in question, under the circumstances proposed by defendant, Animal Defense League, will reasonably subject plaintiffs, or either of them, to stray dogs and cats, if any, to the material annoyance and discomfort of plaintiffs, or either of them? Answer: Yes.

"Question No. 3: Do you find from a preponderance of the evidence that the manner of use to which defendant, Animal Defense League, intends to put the property in question, under the circumstances proposed by defendant, will produce obnoxious

and disagreeable odors, if any, to such an extent as to result in the material annoyance and discomfort of plaintiffs, or either of them? Answer: No.

"Question No. 4: Do you find from a preponderance of the evidence that the manner of use to which defendant, Animal Defense League, intends to put the property in question, under the circumstances proposed by defendant, will produce flies and other insects, if any, to such an extent as to result in material annoyance and discomfort to plaintiffs or either of them? Answer: No.

"Question No. 5: Do you find from a preponderance of the evidence that the manner of use to which defendant, Animal Defense League, intends to put the property in question, under the circumstances proposed by Defendant, will result in the substantial reduction in the value of the property of plaintiffs or either of them? Answer: No.

"Question No. 6: Do you find from a preponderance of the evidence that the operation of defendant's proposed animal shelter will be in the interest of public welfare? Answer: Yes.

"Question No. 7: Do you find from a preponderance of the evidence that the private nuisance, if any, which may result from the operation of defendant's proposed animal shelter will be outweighed by the public welfare, if any, to the community? Answer: No."

After due notice and hearing, the court rendered judgment for the Animal Defense League non obstante veredicto, Rule 301, T.R.C.P.

Appellants present five points which are submitted and argued together and raise the one contention that appellants were entitled to judgment upon the verdict of the jury and, consequently, the trial court erred in rendering judgment non obstante veredicto. It is not contended that this cause should be remanded. The prayer contained in appellants' brief is that "the action of the trial court granting appellee a judgment notwithstanding the verdict of the jury, be reversed, and that judgment be rendered granting the appellants the permanent injunction prayed for."

It was stated upon oral argument that the trial court, in rendering judgment non obstante veredicto, followed the case of Central Hide & Rendering Co. of Wichita Falls v. Storey, 223 S.W.2d 81, decided September 8, 1949, by the Texarkana Court of Civil Appeals. This decision was by a divided court, Mr. Justice Williams writing the majority opinion and Chief Justice Hall dissenting. Writ of error was granted by the Supreme Court, and on January 25, 1950, the judgment of the Court of Civil Appeals was affirmed by a unanimous court, Mr. Justice Griffin writing the opinion. Storey v. Central Hide & Rendering Co., Tex.Sup., 226 S.W.2d 615, 618.

After a careful review of the evidence, we are of the opinion that the trial court was correct in rendering judgment non obstante veredicto. The opinions of the Court of Civil Appeals and the Supreme Court in the case mentioned compel this conclusion. It was pointed out by the Supreme Court that: "The evidence showed that there was a need for the rendering plant to conserve what would otherwise be wasted; and to afford an efficient and economical means of disposing of garbage, dead animals and residue from the packing and slaughter houses in Smith County, Texas. It was also shown that this was the only rendering plant in the county and served the needs of some 75,000 people to promote better sanitary conditions for all of Smith County."

This statement amounts to a finding as a matter of law (e. g. from undisputed evidence) that the operation of a rendering plant was of public benefit to the people of Smith County at large.

In view of the public interest, it is the general rule that a group of private individuals are not entitled to an injunction restraining the operation of an establishment contributing to the common good, but such parties are relegated to their remedy at law in the form of an action for damages. A suit for injunction will lie only in the unusual case where there is a disproportion of equities, such as where an

offensive although necessary undertaking is carried on in an unsuitable place when it could be as easily and economically carried on in some location where it would give no offense.

The Texarkana Court of Civil Appeals concluded that the record did not present a disproportionate balance of equities and said: "We have reached the conclusion that appellees are not entitled under the facts and circumstances of this case to a permanent injunction prohibiting the operation of appellant's rendering plant *for the reason that they have an adequate legal remedy for damages.*" [223 S.W.2d 83.]

This holding of the Court of Civil Appeals was approved by the Supreme Court. In its opinion, the Supreme Court said: "An abatement of a lawful place of business is a harsh remedy, and we believe *the Court of Civil Appeals majority opinion has correctly disposed of this cause.* 39 Am.Jur. p. 420, § 153."

Appellants contend that the cited case "is not at all in point' (but that), the Supreme Court predicated its holding therein upon the principle of 'the balancing of equities' and specifically stated that the trial court had erred in refusing to receive testimony offered by the defendant in connection with that theory."

We are unable to agree with appellants' argument. The plaintiffs in the Storey case evidently sought an injunction and, in the alternative, prayed for damages. The trial court granted an injunction based upon a jury's answers to special issues favorable to plaintiffs. This judgment was reversed by the Court of Civil Appeals and the cause remanded for further proceedings in accordance with the opinion.

■ It seems, however, that in the course of the trial, the judge refused to allow the Central Hide and Rendering Co. (the defendant in the district court, appellant in the Court of Civil Appeals and respondent in the Supreme Court) to introduce certain evidence relating to the "balancing of equities." The Supreme Court, in discussing the matter in view of another trial, pointed out that this action was erroneous. Under our rules, a case cannot be tried piecemeal.

Fisher v. Coastal Transport Co., Tex.Sup., 230 S.W.2d 522. Upon a remand, the case would stand for trial upon the demand for injunctive relief as well as upon the damages issues. While the Supreme Court opinion seemingly left Storey and his associate plaintiffs with small hope of securing an injunction the Court was not in position to render judgment and, in view of this circumstance, the Supreme Court pointed out that evidence relating to "the balancing of equities" should be received in the event the demand for injunction were insisted upon when the case was retried.

We do not believe the opinion of the Supreme Court can be restricted to a mere holding that the judgment should be reversed because of the improper exclusion of testimony. We cannot disregard the Supreme Court's expressed approval of the holding of the Court of Civil Appeals that under the facts disclosed by the record then before it, the plaintiffs were not entitled to injunctive relief, but were relegated to their action for damages.

■ As we see it, the factual situation here is similar to that disclosed in the Storey case, which involved a rendering plant, a necessary or beneficial establishment from the standpoint of the public at large, but admittedly obnoxious to those living near it. In this case, we have an animal shelter which if constructed may house some 200 dogs. It is a matter of common knowledge that dogs will whine, bark and howl, and that when one of them begins to bark, others will join in. In the present case out of an abundance of precaution these facts were established by the testimony of experts—veterinaries who had had experience with dog kennels and observed the habits of dogs. While it may be conceded that dogs are regarded by a substantial portion of our population as wholly unnecessary annoyances, yet man emerged from the pre-historic past with the dog at his side as a servant and companion, and today, even in our great metropolitan cities man lives in the midst of dogs and cats and birds and other creatures.

■ Despite a sizeable minority opinion, the majority consensus gives the dog a

place in modern society. It follows that institutions which contribute to his welfare and protect human beings from the depredations and annoyances of unattached and stray animals must be considered as fostering the common good.

It does not appear that another location could be selected within a reasonable range of the City of San Antonio that would not be subject to objections similar to those raised by the appellants here. It seems that if the League is to function at all it must necessarily result in annoyance or discomfort to someone. Furthermore, it is not shown that the site selected is wholly inappropriate when the surrounding vicinity is considered. While there are farms in the area, the district, particularly along the Austin Road, is commercialized. It contains gravel pits, the main line of the Missouri-Kansas-Texas Railway Company, machinery storage yards, a battery factory, tourist courts, liquor stores, gasoline filling stations, barn yards, cow lots, dance halls and beer joints, including one which is perhaps unique in that (according to one witness) it caters exclusively to families and no musical selections other than those from Grand Opera are played upon a phonograph.

An aerial photograph of the area involved was introduced in evidence and the proposed location of appellee's kennels or animal shelter was indicated thereon. The person who prepared the aerial photograph map testified that distances scaled upon the map would be correct within one per cent. This testimony was uncontradicted and there seems to be no dispute as to the accuracy of the map. All of appellants' houses, except one, are located upon the Austin Highway and at least 2800 feet from the proposed location of appellee's buildings. The appellant Kessler has a rent house about 1525 feet from said proposed location which is near the center of the 25-acre tract purchased by the League.

Even though the presence of the proposed animal shelter may result in some annoyance to appellants, their remedy (under the holdings of the Storey case) is not by way of injunction but they are relegated to an action for damages. The jury's answer to Special Issue No. 7 will not support an injunction. It is not within the jury's province to pass upon the issue of whether or not the private nuisance which would result from the operation of the proposed animal shelter will be outweighed by the public welfare. This is not a fact issue, but one to be determined by the chancellor in accordance with established equitable rules and principles. Restrictions upon the use of property must necessarily be governed by municipal laws, covenants and sometimes by rules of equity, and not by a jury's opinion as to a proper public policy. Applicable authorities are discussed in the opinions rendered in the Storey case and we need not repeat said discussion here. Rule 452, T.R. C.P. We hold that the trial court was correct in rendering judgment for the appellee notwithstanding the verdict.

In so holding we do not wish to be understood as implying that except for the motion for judgment non obstante veredicto appellants would be entitled to judgment upon the jury's findings, many of which, including Special Issue No. 5, inquiring as to pecuniary loss, were answered unfavorably to appellants. Further, we are not called upon to approve or disapprove the form or substance of the issues submitted, except, perhaps, Special Issue No. 7, as heretofore discussed. As to issues relating to a proposed future use of property, see Jacobs & Wright v. Brigham, Tex.Civ.App., 227 S.W. 249.

Appellants' brief discloses no reversible error and the judgment appealed from is accordingly affirmed.

### On Motion for Rehearing.

Upon rehearing appellants challenge our statement that the accuracy of the aerial photograph introduced in evidence was not questioned. They refer to the testimony of Fred Schuenemann, a party to the suit, who made certain measurements in the area. All such measurements were made from the *property line* of the Animal Defense League tract. The distances calculated on the map were from the proposed location of the League's Animal Shelter. Schuenemann's

distances from the League's property line to certain of appellants' houses were as follows: Schuenemann—1300 feet; Kessler—2550 feet; Kessler first rent house—2400 feet; Kessler second rent house—1250 feet, and Georg—1350 feet. Whether Schuenemann's distances or those shown by the map be accepted, the disposition of this appeal would be the same.

All assignments in appellants' motion for rehearing have been considered and the motion is overruled.