**ESTANCIAS DALLAS CORPORATION,**
Appellant,

v.

**T. R. SCHULTZ et ux., Appellees.**

No. 7459.

Court of Civil Appeals of Texas, Beaumont.

Aug. 30, 1973.

Rehearing Denied Oct. 11, 1973.

David J. Beck, Fulbright, Crooker & Jaworski, Houston, for appellant.

Russell T. Van Keuren, Baggett, Kirk, Van Keuren & Gordon, Morris L. Pepper, Houston, for appellees.

STEPHENSON, Justice.

This is an appeal from an order of the trial court granting a permanent injunction. Trial was by jury and judgment was rendered upon the jury verdict. The parties will be referred to here as they were in the trial court.

Plaintiffs, Thad Schultz and wife, brought this suit asking that defendant, Estancias Dallas Corporation, be permanently enjoined from operating the air conditioning equipment and tower on the property next to plaintiffs' residence. The jury found: that the noise emitted solely from defendant's air conditioning equipment constitutes a nuisance; that the nuisance began May 1, 1969; that it is permanent; that the nuisance has been continuous since it began; that Mrs. Schultz has been damaged $9000 and Thad Schultz $1000, considering material personal discomfort, inconvenience, annoyance and impairment of health as the elements of damages. The jury failed to find that the nuisance proximately caused material personal discomfort, inconvenience, annoyance and impairment of health to either plaintiff. The jury also failed to find that there was any unreasonable delay by plaintiffs in calling the nuisance to the attention of the defendant.

Defendant's first two points of error, briefed together, are that the trial court erred in granting the injunction because plaintiffs failed to secure a jury finding that the nuisance in question was a proximate cause of their alleged discomfort and because the trial court failed to balance the equities in its favor.

We proceed to consider first the matter as to balancing the equities. Even though this matter has arisen many times, we have found little in-depth writing on the subject. The case cited most frequently in this state is Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615 (1950). The rule of law was clearly established in this case that even though a jury finds facts constituting a nuisance, it was held that there should be a balancing of equities in order to determine if an injunction should be granted. The Supreme Court then stated certain guidelines for the trial courts to follow in making such determinations by quoting as follows from 31 Tex.Jur. § 35 Nuisances:

" 'According to the doctrine of "comparative injury" or "balancing of equities" the court will consider the injury which may result to the defendant and the public by granting the injunction as well as the injury to be sustained by the complainant if the writ be denied. If the court finds that the injury to the complainant is slight in comparison to the injury caused the defendant and the public by enjoining the nuisance, relief will ordinarily be refused. It has been pointed out that the cases in which a nuisance is permitted to exist under this doctrine are based on the stern rule of necessity rather than on the right of the author of the nuisance to work a hurt, or injury to his neighbor. The necessity of others may compel the injured party to seek relief by way of an action at law for damages rather than by a suit in equity to abate the nuisance.'

" ' "Some one must suffer these inconveniences rather than that the public interest should suffer. * * * These conflicting interests call for a solution of the question by the application of the broad principles of right and justice, leaving the individual to his remedy by compensation and maintaining the public interests intact; this works hardships on the individual, but they are incident to

civilization with its physical developments, demanding more and more the means of rapid transportation of persons and property." '

" 'On the other hand, an injunction may issue where the injury to the opposing party and the public is slight or disproportionate to the injury suffered by the complainant.' " (226 S.W.2d at 618–619)

We have found application of the doctrine of balancing the equities in the cases which follow.

Lee v. Bowles, 397 S.W.2d 923, 927 (Tex.Civ.App., San Antonio, 1965, no writ), wherein the jury found the operation of a race track to be a nuisance but the trial judge balanced the equities and denied the injunction. The court of civil appeals affirmed the judgment with this statement:

"The evidence in this case justified a finding by the trial court that the public generally would benefit from the operation of this track, both from a standpoint of recreational value and as an economic asset. Further, there was no showing that the proposed location was unsuitable."

Schiller v. Raley, 405 S.W.2d 446, 447 (Tex.Civ.App., Waco, 1966, no writ), wherein the trial court enjoined the operation of a cattle feed lot which the jury had found to be a nuisance. The court of civil appeals reversed and remanded the case with this statement:

"There is evidence that the operation is 'essential to the meat supply of the city', and 'someone must do it'; that it is a useful and necessary business."

Garland Grain Co. v. D-C Home Owners Improve. Ass'n, 393 S.W.2d 635, 643 (Tex.Civ.App., Tyler, 1965, error ref. n. r. e.), wherein the trial court granted the injunction to abate the operation of cattle feeding pens as a nuisance. The court of

civil appeals reversed and rendered the case, balancing the equities in favor of defendants, with this statement:

"In view of the fact that the question of health is not involved and that defendants' business is located in a rural area where many of the plaintiffs' cattle, to some extent at least, causes obnoxious odor and in view of the fact that there is no other place in this area of the state where such lawful business could be maintained without visiting the same burden on other people and in view of the fact that the cessation of defendants' business would result in harm to the public as well as defendants, we have concluded that the trial court was in error in finding that the equities were balanced in favor of the plaintiffs."

Texas Lime Company v. Hindman, 300 S.W.2d 112, 123 [Tex.Civ.App., Waco, 1957, affirmed 157 Tex. 592, 305 S.W.2d 947 (1957)], wherein the trial court enjoined the operation of a lime plant found to be a nuisance. The court of civil appeals reversed and remanded the case with this statement:

"We are of the further view that since the lime plant owned by the Limestone Products Company and operated by Texas Lime Company is a lawful, useful and necessary business, and that it does and has contributed to the welfare and prosperity of the community in which it is located, as well as to the health and welfare of the people of the State of Texas, in that useful and necessary products are being produced, that considering the time the plant was located and the conditions surrounding, and all the facts and circumstances surrounding at the time of its location, that the granting of an injunction as requested by the appellees would be unjust, improper, inequitable and would result in an unbalancing of the equities in favor of a few individuals as against the public at large."

Fargason v. Economy Furniture, Inc., 356 S.W.2d 212, 215 (Tex.Civ.App., Austin, 1962, error ref. n. r. e.), wherein the jury found the operation of an incinerator in connection with a furniture plant to be a nuisance, but the trial court refused the injunction. The court of civil appeals affirmed the judgment, holding that the trial court did not abuse its discretion and stating:

"The abatement of a lawful business is a harsh remedy and there should be a balancing of equities by the Trial Court in order to determine if an injunction should be granted even though the jury found it to be a nuisance."

Lamb v. Kinslow, 256 S.W.2d 903 (Tex. Civ.App., Waco, 1953, error ref. n. r. e.), wherein the trial court granted an injunction against the burning of cotton burrs in connection with defendant's cotton gin. The jury found such burning to be a nuisance. The court of civil appeals affirmed the judgment and held it was proper for the trial court to balance the equities even though that question was raised for the first time on motion for judgment. The appellate court refused to hold that the trial court abused its discretion in not balancing the equities in favor of defendants.

Hill v. Villarreal, 383 S.W.2d 463, 465 (Tex.Civ.App., San Antonio, 1964, error ref. n. r. e.), wherein the trial court refused an injunction against a rendering plant even though the jury found the operation to be a nuisance. The court of civil appeals affirmed, holding the trial court did not abuse its discretion after balancing the equities. Among other factual statements, the following appears in the opinion:

"The issue presented in this case is thus one involving the conflicting rights of the parties in the respective uses of their properties. In resolving this issue favorably to appellees after balancing the equities, the trial court found: appellees are engaged in an essential and necessary business which promotes the general welfare and good health of the citizens of San Antonio; a rendering

plant helps to conserve what would otherwise be wasted and helps to afford an efficient and economical means of disposing of dead animals, scraps and offal . . . ."

Georg v. Animal Defense League, 231 S.W.2d 807, 809–810 (Tex.Civ.App., San Antonio, 1950, error ref. n. r. e.), wherein the trial court denied an injunction sought to close an animal shelter for dogs although the jury found the operation to be a nuisance. The court of civil appeals affirmed, approving the balancing of the equities in favor of defendants, saying:

"In view of the public interest, it is the general rule that a group of private individuals are not entitled to an injunction restraining the operation of an establishment contributing to the common good, but such parties are relegated to their remedy at law in the form of an action for damages. A suit for injunction will lie only in the unusual case where there is a disproportion of equities, such as where an offensive although necessary undertaking is carried on in an unsuitable place when it could be as easily and economically carried on in some location where it would give no offense."

There is no point of error complaining of the definition of the term "nuisance" given by the trial court to the jury. That definition is as follows:

"You are instructed that by the term 'nuisance' as used in this Charge is meant any condition, brought about by one party in the use of his property, so unusual and excessive that it necessarily causes injury or damage or harm or inconvenience to another party in the use and enjoyment of his property, substantially, materially and unreasonably interfering with the latter's comfort and proper use and enjoyment of his property, taking into consideration the nature and use of the property of both parties and the character of community in which they are situated, and which condition would be substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits living in the locality where the premises are situated."

■■ There is no specific mention in the judgment that the trial court balanced the equities. However, that question was raised by the pleadings, evidence was heard, and there is an implied finding that the trial court balanced the equities in favor of plaintiffs by entering the judgment granting the injunction. We do not find that the trial court abused its discretion in balancing the equities in favor of plaintiffs.

It is significant that the Supreme Court of Texas in the *Storey* case, supra, placed great emphasis upon public interest. Also, in all of the other cases cited above, the appellate courts in their opinions refer to the benefit to the public generally in permitting a nuisance to continue through the balancing of equities. We find little or no testimony in the record before us reflecting benefit to the public generally. There is no evidence that there is a shortage of apartments in the City of Houston and that the public would suffer by having no place to live.

Our record shows that this apartment complex was completed about March or April of 1969 with about 155 rentable apartments in eight buildings. The air conditioning unit complained of here served the entire complex. This unit is located at the back side of defendant's property, about five and one-half feet from plaintiffs' property line, about fifty-five feet from plaintiffs' back door, and about seventy feet from plaintiffs' bedroom. According to much of the testimony, the unit sounds like a jet airplane or helicopter. The plaintiffs testified: That this was a quiet neighborhood before these apartments were constructed. That they can no longer do any entertaining in their backyard because of the noise. That they cannot carry on a normal conversation in their home with all their doors and windows closed.

That the noise interferes with their sleep at night. Several of the neighbors gave similar testimony.

Plaintiffs testified that the value of their land before was $25,000 and $10,000 after the noise began. One of the neighbors, a real estate broker, placed the value at $25,000 before and $12,500 after. A witness who qualified as an expert metallurgical consultant testified as to the results of tests made at various points as to the sound factors in decibels before and after defendant made changes in an effort to reduce the noise.

A witness testified: That he was the original owner of the apartments. That it cost about $80,000 to construct this air conditioning system and that separate units for the eight buildings would have cost $40,000 more. That it would now cost $150,000 to $200,000 to change to that system. That these apartments could not be rented without air conditioning.

Applying the rules of law set forth above in the quotation from the *Storey* case, supra (226 S.W.2d at 619), the nuisance in this case will not be permitted to exist " 'based on the stern rule of necessity rather than on the right of the author of the nuisance to work a hurt, or injury to his neighbor.' " There is not evidence before us to indicate the " 'necessity of others . . . compel[s] the injured party to seek relief by way of an action at law for damages rather than by a suit in equity to abate the nuisance.' " Furthermore, although plaintiffs had a count in their pleading seeking damages, in response to a motion made by defendant, the court forced plaintiffs to elect at the close of their evidence. Thus, defendant's own trial tactics prevented the development of a full record upon which we could predicate the doctrine of balancing the equities.

■■ Plaintiffs were not required to recover damages for a temporary nuisance, that is, for the time when the nuisance began until the date of the trial, in order to secure a permanent injunction. They were entitled to such injunction based upon the affirmative answers given by the jury as set out above. The failure on the part of the jury to give an affirmative answer to the proximate cause issues related to the damage issues or to a temporary nuisance and did not alter the situation. Columbian Carbon Co. v. Tholen, 199 S.W.2d 825 (Tex.Civ.App., Galveston, 1947, error ref.), and King v. Miller, 280 S.W.2d 331, 333 (Tex.Civ.App., Eastland, 1955, error ref. n. r. e.).

Defendant's two remaining points of error pertain to objections made to Special Issue No. 1 which reads as follows:

"Do you find from a preponderance of the evidence that the noise emitted solely from the Defendant's air conditioning equipment constitutes a nuisance, as that term is herein defined?"

The objections are that the court used the word "noise" instead of "sound" and also used the word "equipment" instead of specifying some particular part of the air conditioner. These points of error are overruled.

■■ The use of the word "noise" instead of "sound" did not constitute a comment on the weight of the evidence because it was uncontroverted that "noise" came from the operation of this air conditioning unit. Every witness conceded this unit made a "noise" and the attorneys for all parties used that term in their interrogation of the witnesses. We consider the use of the word "equipment" as not being too broad in connection with the special issue. The jury could not have been confused or misled as none of the witnesses were that specific in their testimony as to the source of the sound.

Affirmed.