ACCEPTED
03-13-00370-CV
6291805
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/30/2015 12:41:14 PM
JEFFREY D. KYLE
CLERK

**CASE NO. 03-13-00370-CV**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/30/2015 12:41:14 PM
JEFFREY D. KYLE
Clerk

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN

**STATE BOARD FOR EDUCATOR CERTIFICATION,**
*Appellant*,

**v.**

**ERASMO MONTALVO,**
*Appellee*.

On Appeal from the 200th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-12-002991; Before the Honorable Tim Sulak

## APPELLANT'S REPLY BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

ELLEN M. SAMETH
Assistant Attorney General
State Bar No. 17555550
OFFICE OF THE TEXAS ATTORNEY GENERAL
Administrative Law Division
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 936-1838
Facsimile: (512) 457-4608
ellen.sameth@texasattorneygeneral.gov
*Attorneys for Appellant*

**Oral Argument Requested**                                    **July 30, 2015**

# TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................................................ii

INDEX OF AUTHORITIES...............................................................................................iii

I. STATEMENT OF FACTS ............................................................................................1

II. ARGUMENT AND AUTHORITIES ..........................................................................3

    1. Reply to Appellee's section regarding the Board's lack of authority to revoke an educator certificate "in the absence of actual wrongdoing." (Appellee's Br. at 11) ...........................................................................................3

    2. Reply to Appellee's section that the Board's reliance on *Marrs v. Matthews* is misplaced. (Appellee's Br. at 11) ....................................4

    3. Reply to Appellee's argument that the Board took Findings of Fact "out of context" in rendering its Final Decision and Order. (Appellee's Br. at 15)...............................................................................................................7

    4. Reply to section regarding statements made by Merle Dover, TEA Deputy Associate Counsel. (Appellee's Br. at 21–22) ........................8

    5. Reply to Montalvo's section regarding adoption of the Educators' Code of Ethics and the lack of statutory cite for "unworthy to instruct." (Appellee's Br. at 24–25) ....................................................................9

    6. Reply to Montalvo's statement that the Findings of Fact do not support the Board's changes (Montalvo's Issue II). ........................................10

        a. Why *Whalen* does not support Montalvo...........................12

    7. Reply to Montalvo's section describing the "unworthy to instruct" standard as arbitrary and capricious (Montalvo's Issue III). ..............14

    8. Reply to Montalvo's assertion that the trial court properly issued a temporary injunction against the Board. (Appellee's Issue IV). ........15

CONCLUSION .................................................................................................................16

PRAYER ...........................................................................................................................16

CERTIFICATE OF COMPLIANCE.................................................................................18

CERTIFICATE OF SERVICE .........................................................................................18

# INDEX OF AUTHORITIES

**Cases**

*Estancias Dall. Corp. v. Schultz*,
500 S.W.2d 217 (Tex. Civ. App.—Beaumont 1973, writ ref'd n.r.e.) ...............16

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) .................................................................................5, 6

*Heritage on the San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality*,
393 S.W.3d 417 (Tex. App.—Austin 2012, pet. denied)....................................10

*Imperial Am. Res. Fund, Inc. v. R.R. Comm'n*,
557 S.W.2d 280 (Tex. 1977) ..............................................................14

*In re State Bd. for Educator Certification*,
452 S.W.3d 802 (Tex. 2014) ..............................................................15

*Lewis v. Jacksonville Bldg. & Loan Ass'n*,
540 S.W.2d 307 (Tex. 1976) ..............................................................10

*Marrs v. Matthews*,
270 S.W. 586 ...................................................................... 4, 5, 9

*Nueces Cnty. Drainage & Conservation Dist. No. 2 v. Bevly*,
519 S.W.2d 938 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.) .........16

*R.R. Comm'n v. Pend Oreille Oil & Gas Co.*,
817 S.W.2d 36 (Tex. 1991) ..............................................................14

*Texarkana & Fort Smith Ry. Co. v. Hous. Gas & Fuel Co.*,
121 Tex. 594, 51 S.W.2d 284 (1932) ..................................................10

*TGS-NOPEC Geophysical Co. v. Combs*,
340 S.W.3d 432 (Tex. 2011) ..............................................................10

**Statutes**

Tex. Educ. Code
   § 21.031 ..................................................................................................6
   § 21.041(7)............................................................................................6
   § 21.041(8)............................................................................................6

**Rules**

19 Tex. Admin. Code
   § 249.5 ..................................................................................................6

Tex. R. App. P. 38.1(g) ..............................................................................2

**Other Authorities**

31 Tex. Jur. *Nuisances* § 35 ...................................................................16

**Decision of the Commissioner**

*Whalen v. Rocksprings Indep. Sch. Dist.*,
   No. 065-R1B-284, 1985 TX Educ. Agency LEXIS 61........................... 12, 13, 14

**CASE NO. 03-13-00370-CV**

---

**IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN**

---

**STATE BOARD FOR EDUCATOR CERTIFICATION,**
*Appellant*,

**v.**

**ERASMO MONTALVO,**
*Appellee.*

---

On Appeal from the 200th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-12-002991; Before the Honorable Tim Sulak

---

**APPELLANT'S REPLY BRIEF**

---

TO THE HONORABLE THIRD COURT OF APPEALS:

COMES NOW Appellant, State Board for Educator Certification (Board), represented by and through the Office of the Texas Attorney General, and the undersigned Assistant Attorney General, and files its Appellant's Reply Brief. In support hereof, the Board respectfully shows the Court the following:

## I.    STATEMENT OF FACTS

While Montalvo's recitation of actual facts is accurate, the Board takes exception to the way in which those facts are presented as being misleading.

Montalvo imputes conclusions where none have been expressed by either the Board or the ALJ in their Findings of Fact.

For example, on page 4 of Appellee's Brief, he expounds on the fact that VS appears happy and excited in a video with Montalvo. The ALJ gave no credence to Montalvo's argument about this seemingly normal behavior by VS, by referring to the testimony of the Board's expert witness, a Licensed Professional Counselor with experience in the field of abuse. 1 AR 16, 33–35. In her analysis of the evidence, the ALJ point-blank stated that, based on the testimony of the Board's expert witness, she gave no weight to VS's apparently normal behavior around Montalvo, including her behavior in the video with Montalvo, or her inconsistent statements about what happened. 1 AR 53.

Another example is on page 5 of Appellee's Brief, in ¶ 7, and again on page 7, in ¶ 10, where Montalvo concludes that the criminal jury acquitted him because VS was not credible. However, there is no evidence in the administrative record that the criminal jury found VS lacking in credibility.

In conclusion, had Montalvo recited the facts as found by the ALJ, instead of editorializing them and changing their tenor and meaning, the Board would have no objection. *See* Tex. R. App. P. 38.1(g).

2

## II.    ARGUMENT AND AUTHORITIES

**1.    Reply to Appellee's section regarding the Board's lack of authority to revoke an educator certificate "in the absence of actual wrongdoing."  (Appellee's Br. at 11)**

Montalvo errs in his argument that the Board lacked authority to sanction him "in the absence of actual wrongdoing."  Appellee's Br. at 11.  "Actual wrongdoing" is not necessarily the equivalent of a Code of Ethics violation or one specific, quantifiable act.  What caused the Board to take note of what Montalvo had done was not just one instance of poor judgment and the subsequent conduct resulting from that judgment, but instead multiple instances of poor judgment and the resultant conduct.

While, for example, there is no bright line rule regarding phone calls between educators and students, in this case it is not unreasonable for the Board to find that 480 calls—even taking into account that a number of them *may* have been "dropped" calls—is inappropriate regardless of content.  Nor is it unreasonable for the Board to find that allowing students into your home to use the Jacuzzi in your master bathroom—especially in allowing one female student, alone, into your master bathroom Jacuzzi—is crossing the boundary of an appropriate educator-student relationship.

In concluding that Montalvo is unworthy to instruct, the Board looked at the totality of Montalvo's judgment calls and actions, and concluded that he had crossed the line and lacks the ability to make the appropriate judgments that educators must make in order to be role models for students.

It should be noted that the Board made no attempt to sanction Montalvo for one call, or two calls, or any number of calls, or after Montalvo had students in his home one time only. Nor did the Board claim that just one instance of poor judgment put Montalvo "over the line" into inappropriate conduct as an educator. The Board instead cited all of these instances as evidence of Montalvo's deficient judgment and complained not only of Code of Ethics violations when it originally filed its administrative complaint, but also pled that he is unworthy to instruct.

**2.** **Reply to Appellee's section that the Board's reliance on *Marrs v. Matthews* is misplaced. (Appellee's Br. at 11)**

Montalvo's argument that the Board's reliance on the *Marrs*[1] case is misplaced is short-sighted. The *Marrs* case, relying on the "unworthy to instruct" language, involves an educator involved in a scheme to fraudulently issue educator certificates. While it is true that the *Marrs* Court did not find the phrase "unworthy to instruct" to be vague "as to the conduct in that case" (Appellee's Br. at 12), the opinion does not imply that the phrase is limited to that particular set of

---

[1] *Marrs v. Matthews*, 270 S.W. 586 (Tex. Civ. App—Texarkana 1925, writ ref'd).

circumstances or others like it. On the contrary, the opinion does justice to the phrase "unworthy to instruct" by giving an expansive explanation of not only what it means, but why the phrase *cannot be specifically defined. Id.* at 588.

The Board is certainly qualified to determine when the line defining a proper educator-student relationship is crossed, and sanction accordingly. In fact, educators themselves are capable of determining when they have crossed that boundary. It is clearly worrisome to the Board that Montalvo did not recognize that his conduct (having students use the Jacuzzi in his master bathroom; engaging in tens, if not hundreds, of phone calls with one particular student) shows major lapses in his judgment as an educator.

The fact that the phrase "unworthy to instruct" has no black and white definition does not indicate lack of accountability and an ability to arbitrarily sanction. *See* Appellee's Br. at 13. The need for more concrete notice of a violation is much stronger in criminal cases than in non-criminal cases such as this one. Montalvo cites to the *Grayned*[2] case for support. However, while *Grayned* does expressly state that it is a "basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined," *Grayned* deals with the potential for a penal sanction. *Id.* at 108. Here, however, there is no penal sanction involved. While the loss of a professional certification is serious, it is not the sort of

---

[2] *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

5

seriousness that involves the potential to be sent to jail or prison, or have a conviction on one's criminal record—as in *Grayned*. And the *Grayned* opinion goes on to state that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Id.* at 110. Further, the Court explained that,

> [d]esigned, according to its preamble, 'for the protection of Schools,' the ordinance forbids deliberately noisy or diversionary activity that disrupts or is about to disrupt normal school activities. It forbids this willful activity at fixed times—when school is in session—and at a sufficiently fixed place—'adjacent' to the school. Were we left with just the words of the ordinance, we might be troubled by the imprecision of the phrase 'tends to disturb.'

*Id.* at 110–11. This is an important point and can be directly related to the "unworthy to instruct" language in the Board's rules.

Various statutes, rules, and the Board's Disciplinary Policy and Mission Statement (adopted February 6, 2009) reference the fact that the conduct of educators is to be regulated by the Board. *See* Tex. Educ. Code §§ 21.031, .041(7), .041(8). The Board also has a duty to protect not only schoolchildren but educators. 19 Tex. Admin. Code § 249.5; SBEC Disciplinary Policy and Mission Statement. *See* Apps. B and C, respectively. When taken together, the rules, statutes and Disciplinary Policy put the "unworthy to instruct" language in context. It is worth repeating that Texas case law is replete with numerous phrases that are similar to

6

"unworthy to instruct" in that they defy exact definition yet pass constitutional muster. *See* Appellant's Br. at 20–21.

3. **Reply to Appellee's argument that the Board took Findings of Fact "out of context" in rendering its Final Decision and Order. (Appellee's Br. at 15)**

No Findings were taken out of context by the Board because all Findings relied on by the Board involved Montalvo's conduct. 1 AR 61-62, or s*ee* App. D (ALJ's Findings of Fact and Conclusions of Law). In fact, it is Montalvo who took the Findings out of context. The Board did not revoke Montalvo's certificate because, for example, "[d]istrict protocol required that injured students be sent to the trainer," or because, "[f]ollowing her injury, VS underwent stretching, rub downs, ice baths, and whirlpool use under Mr. Montalvo's direction," or because of any of the other Findings of Fact *taken individually*. *See* 1 AR 62, 63 (FOF 11, 18), or *see* App. D. The Board's Order expressly states that it is based on seven Findings of Fact that, *when taken together*, indicate that Montalvo is unworthy to instruct. *See* 1 AR 68– 69, or *see* App. A (Board's Final Decision and Order).

Common sense dictates that a male educator inviting a female student (or any student) to his home to use the master bath Jacuzzi has engaged in conduct no educator should be engaging in, regardless of whether or not any misconduct occurred. The same goes for excessive phone calls between an educator and a student, as here. The fact that the only people who know what the content of those

7

calls were and that they both testified that the calls were not in the furtherance of a romantic relationship does not mean that the sheer number of calls could not be taken into account by the Board. But the Board did not rely on just those Findings. Instead, it relied on the *totality* of Findings regarding Montalvo's decisions and conduct in reaching its conclusion.

The Board's Final Decision and Order does not stand for the proposition that if an educator gives students rubdowns, *or* assists them in stretching, *or* engages in any number of other individual acts as found to have been committed by Montalvo that they are in danger of losing their certificate. In Montalvo's case, it was all of his decisions that, when taken together, are indicative of an educator who lacks judgment, cannot be a role model for students, and is unworthy to instruct.

### 4. Reply to section regarding statements made by Merle Dover, TEA Deputy Associate Counsel. (Appellee's Br. at 21–22)

Montalvo's quote, attributed to Merle Dover (Appellee's Br. at 21–22) speaking at a school law seminar in 2011, is taken out of context. As Ms. Dover explained while testifying at the hearing for Montalvo's request for a temporary restraining order, her remarks regarding phone calls were not part of any prepared speech but were in response to a hypothetical question from an audience member to which she was responding. *See* 2 RR 53:18–55:6. And, as with all other findings of fact that Montalvo brings up in his Brief, the phone calls must be seen as part of the

8

broader picture as opposed to Montalvo's narrowly painted picture that phone calls alone do not make an educator unworthy to instruct.

**5. Reply to Montalvo's section regarding adoption of the Educators' Code of Ethics and the lack of statutory cite for "unworthy to instruct." (Appellee's Br. at 24–25)**

It is merely Montalvo's opinion that the term "unworthy to instruct" should be limited to "egregious cases such as fraudulently issuing teaching certificates," as in the *Marrs* case. Appellee's Br. at 25. The fact that the Board now has in place a comprehensive Code of Ethics which did not exist at the time that the "unworthy to instruct" language appeared in statute in no way negates the need for, or legitimacy of, language to sanction educators when the Board finds that an educator has crossed the boundary of a proper educator-student relationship despite the lack of a Code of Ethics violation. Montalvo's judgments and actions are indicative of that necessity. For example, the fact that no violation was found in terms of solicitation of a romantic relationship between Montalvo and VS does not indicate that an excessive number of calls between an educator and a student is "okay." Further, the fact that there was no finding of anything improper going on during students' visits to Montalvo's master bath Jacuzzi, and hence no Code of Ethics violation, does not mean that such behavior is also "okay."

Montalvo is correct that the term "unworthy to instruct" no longer appears in the Texas Education Code, having been repealed when the Board was formed by the

9

legislature in 1995. The term does, however, exist in the Board's rules. The Board's rules have the force and effect of law. *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976) ("Valid rules and regulations promulgated by an administrative agency acting within its statutory authority have the force and effect of legislation.") (citing *Texarkana & Fort Smith Ry. Co. v. Hous. Gas & Fuel Co.*, 121 Tex. 594, 51 S.W.2d 284 (1932)).

In conclusion, it is absolutely within the Board's discretion to determine that Montalvo's conduct crossed the line into "inappropriate" regardless of whether or not a specific ethical standard had been violated, and regardless of whether or not the term "unworthy to instruct" appears in statute. In other words, the Board has the authority to make policy determinations and the courts give deference to those determinations, as long as they are reasonable. *See Heritage on the San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality*, 393 S.W.3d 417, 424 (Tex. App.—Austin 2012, pet. denied) (citing *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011)).

**6.  Reply to Montalvo's statement that the Findings of Fact do not support the Board's changes (Montalvo's Issue II).**

One of Montalvo's complaints is that the Board revoked his certificate for "poor judgment," when "poor judgment" is not a standard for maintaining one's certificate. Appellee's Br. at 33. Montalvo's diatribe against the use of "poor judgment" as a basis for revocation is misplaced. Significantly, the Board's Final

10

Decision and Order does not reference Montalvo's "poor judgment" other than by inference. Instead, the Order itself clearly explains the rationale on which it is based, which is:

- Protecting the safety and welfare of Texas schoolchildren and personnel is a primary purpose of the SBEC.

- The moral fitness of an educator must be determined from an examination of all relevant conduct and is not limited to conduct that constitutes a criminal violation . . . .

- Allowing a female student to use the [J]acuzzi in the master bathroom of his home while no one else is present, calling a student over 480 times in the late evening over a four month period, and a male coach giving a female athlete rubdowns and ice baths, failing to follow district protocol to send an injured athlete to the trainer is conduct that the SBEC considers to cross the bounds of the appropriate student-teacher relationship and is sanctionable conduct.

- Respondent's actions crossed the bounds of an appropriate educator-student relationship and show that he is not presently worthy to hold a Texas educator certificate.

I AR 68–69 (Final Decision and Order), or *see* App. A. It is indeed Montalvo's poor judgment which led him to engage in inappropriate conduct with his students in general, and VS in particular. And, according to the Board's Final Order, it is Montalvo's *conduct* that is responsible for his certificate revocation. I AR 69, or *see* App. A.

Nor, as Montalvo also argues, has the Board revoked his certificate because of 480 phone calls, or because of his allowing a female student to use the Jacuzzi in his master bath at home, or because of any other *individual* Finding of Fact as found by the ALJ and adopted by the Board. Rather, as the Board has consistently explained, and as its Final Decision and Order details, it is because the totality of Montalvo's judgments and subsequent actions have crossed the boundary into inappropriate conduct. For that reason, passages cited by Montalvo from the *Whalen*[3] case are inapplicable. Appellee's Br. at 34, 35.

### a. Why *Whalen* does not support Montalvo.

*Whalen* involved a case where a teacher violated express instructions in presenting material in a sex education class over the course of several class periods spanning two days. The Commissioner, although hesitant to affirm the Board of Trustees' decision to terminate Whalen's contract after the first year of a two year contract, did so. His hesitancy was because, as the passage cited by Montalvo in his Brief (Appellee's Br. at 34) says, "one instance of exercising poor judgment will not necessarily support an action of termination of employment." *Whalen*, 1985 TX Educ. Agency LEXIS 61, at *17.

---

[3] *Whalen v. Rocksprings Indep. Sch. Dist.*, No. 065-R1B-284, 1985 TX Educ. Agency LEXIS 61, at *17.

But Montalvo failed to include a later passage from the *Whalen* Decision which *is* applicable to this case:

> Nevertheless, despite these reservations, when a teacher engages in activity which is *potentially harmful* to her students' physical or emotional well being, a school district must be allowed to terminate that teacher's employment rather than risk the possibility that the teacher might engage in further similar conduct.

*Id.* at *18 (emphasis added). And, following in that same paragraph:

> In the present case, Petitioner demonstrated that the Board's decision was questionable. *She did not demonstrate, however, that it was unreasonable. The decision of the Board should, therefore, be affirmed.*

*Id.* at 19 (emphasis added). And, while the *Whalen* Decision also states that the harm must be significant (*Id.* at *18), in the present case we have a male coach inviting a female student, alone, to his home to use the Jacuzzi in his master bathroom; engaging in hundreds of phone calls, including 80 calls after 10:00 p.m., no matter how brief they may be; treating her injury himself with ice baths and rubdowns; and generally engaging in questionable behavior. All of this is evidenced by the Findings of Fact in the Board's Final Decision and Order, adopted verbatim from the ALJ's Proposal for Decision. I AR 67–69, or *see* App. A. Not only is the potential for harm present, as noted in the *Whalen* decision, but, in considering all that has transpired for both VS and Montalvo as a result of all of these actions, significant harm can certainly be considered to have occurred.

13

While *Whalen* involves the appeal of a Decision of the Commissioner of Education rather than the appeal of a state Board decision, the rationale of the Commissioner's Decision certainly applies. In a substantial evidence appeal, the standard is not whether the court agrees with the Board's decision, or even if the court believes it is a wrong decision. Rather, the court must affirm the Board's Final Decision and Order if it is reasonable. *Imperial Am. Res. Fund, Inc. v. R.R. Comm'n*, 557 S.W.2d 280, 286 (Tex. 1977); *R.R. Comm'n v. Pend Oreille Oil & Gas Co.*, 817 S.W.2d 36, 41 (Tex. 1991) ("At its core, the substantial evidence rule is a reasonableness test or a rational basis test."). Because the Board's position is reasonable, the trial court should have affirmed its Final Decision and Order.

### 7. Reply to Montalvo's section describing the "unworthy to instruct" standard as arbitrary and capricious (Montalvo's Issue III).

The Board has briefed this issue in detail in its previously-filed Appellant's Brief. However, it is worth emphasizing that Montalvo's opinion as to when the standard applies ("when involving extreme and egregious conduct that is not now articulated in the Code of Ethics"[4]) is just that, his opinion. While the Code of Ethics is a comprehensive listing of ethical standards to be adhered to by educators, it cannot possibly be all-encompassing since it refers to human behavior, which, potentially, entails an infinite number of possibilities. Again, it is not unreasonable

---

[4] Appellee's Br. at 37.

for the Board to find that allowing a female student into your master bath Jacuzzi is not appropriate behavior for a teacher. And that is just one of Montalvo's behaviors, based on his judgment or lack thereof, to which the Board took exception in its Final Decision and Order. All Findings were adopted verbatim from the Proposal for Decision, with no objection by Montalvo.

**8. Reply to Montalvo's assertion that the trial court properly issued a temporary injunction against the Board. (Appellee's Issue IV).**

The Court did not, in fact, balance the equities when issuing the temporary injunction against the Board, as Justice Guzman opined in her concurring opinion. *In re State Bd. for Educator Certification*, 452 S.W.3d 802, 809 (Tex. 2014) (Guzman, J., concurring). The Findings of Fact and Conclusions of Law filed by the trial court following the hearing regarding injunctive relief, while mentioning that the "competing equities favor granting the injunction," make no mention of facts other than the ones affecting Montalvo. RR[5] 8–10, or s*ee* App. E. In other words, the Findings of Fact are conclusory only. The harm or potential harm to schoolchildren faced with an educator displaying Montalvo's lack of judgment, is not mentioned, let alone discussed. Montalvo's own briefing only mentions the testimony concerning Montalvo's experience as an educator, the fact that he was placed on leave with pay after he was indicted, that he was reinstated after he was

---

[5] Reporter's Record

15

acquitted, nothing more. Appellee's Br. at 40. "Balancing" requires more than just looking at one side of the equation, and yet, that is all that was done in this case. *Estancias Dall. Corp. v. Schultz*, 500 S.W.2d 217, 221 (Tex. Civ. App.—Beaumont 1973, writ ref'd n.r.e.) (quoting 31 Tex. Jur. *Nuisances* § 35) ("According to the doctrine of 'comparative injury' or 'balancing of equities' the court will consider the injury which may result to the defendant and the public by granting the injunction *as well as* the injury to be sustained by the complainant if the writ be denied.") (emphasis added); *Nueces Cnty. Drainage & Conservation Dist. No. 2 v. Bevly*, 519 S.W.2d 938, 948 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.).

## CONCLUSION

The Board's actions were reasonable: in adopting all Findings of Fact verbatim, the Board concluded that Montalvo is unworthy to instruct. Under the substantial evidence standard, the Court must affirm the Board's Final Decision and Order as there is substantial evidence in the record to support it.

## PRAYER

For the reasons stated above and in its initial Appellant's Brief, Appellant State Board for Educator Certification respectfully prays that this Court reverse the trial court's Final Judgment and affirm the Board's Final Decision and Order permanently revoking Montalvo's educator certificate.

16

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

*/s/ Ellen M. Sameth*
ELLEN M. SAMETH
Assistant Attorney General
Texas State Bar No. 17555550
OFFICE OF THE TEXAS ATTORNEY GENERAL
Administrative Law Division
P.O. Box 12548
Austin, Texas  78711-2548
Telephone:  (512) 936-1838
Facsimile:   (512) 457-4608
ellen.sameth@texasattorneygeneral.gov
*Attorneys for Appellant*
*State Board for Educator Certification*

17

## CERTIFICATE OF COMPLIANCE

I certify that this Appellant's Reply Brief submitted complies with Tex. R. App. P. 9 and the word count of this document is 3,700. The word processing software used to prepare this filing, and calculate the word count of the document, is Microsoft Word 2010.

Date: July 30, 2015

*/s/ Ellen M. Sameth*
Ellen M. Sameth
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2015, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record:

Mark W. Robinett                        ***Via: Electronic Service***
BRIM, ARNETT, ROBINETT,
CONNERS & MCCORMICK, P.C.
2525 Wallingwood Drive, Bldg. 14
Austin, Texas 78746
mrobinett@brimarnett.com

*/s/ Ellen M. Sameth*
Ellen M. Sameth
*Assistant Attorney General*

CASE NO. 03-13-00370-CV

---

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN

---

STATE BOARD FOR EDUCATOR CERTIFICATION,
*Appellant*,

v.

ERASMO MONTALVO,
*Appellee*.

---

On Appeal from the 200th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-12-002991; Before the Honorable Tim Sulak

---

APPELLANT'S REPLY BRIEF

---

# APPENDIX

A. FINAL DECISION AND ORDER

B. 19 TEX. ADMIN. CODE § 249.5

C. SBEC DISCIPLINARY POLICY AND MISSION STATEMENT

D. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

E. TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

CASE NO. 03-13-00370-CV

---

**IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN**

---

**STATE BOARD FOR EDUCATOR CERTIFICATION,**
*Appellant,*

v.

**ERASMO MONTALVO,**
*Appellee.*

---

On Appeal from the 200th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-12-002991; Before the Honorable Tim Sulak

---

**APPELLANT'S REPLY BRIEF**

---

# APPENDIX A

| | | |
|---|---|---|
| TEXAS EDUCATION AGENCY, | § | BEFORE THE STATE OFFICE |
| EDUCATOR CERTIFICATION AND | § | |
| STANDARDS DIVISION, | § | |
| Petitioner | § | |
| | § | |
| V. | § | OF |
| | § | |
| ERASMO MONTALVO, JR., | § | |
| Respondent | § | ADMINISTRATIVE HEARINGS |

## FINAL DECISION AND ORDER

Came on for consideration on the 10th day of August 2012 the above-styled matter.

After proper notice was given, the above-styled case was heard by an Administrative Law Judge who made and filed a Proposal for Decision containing Findings of Fact and Conclusions of Law. This Proposal for Decision was properly served on all parties, who were given an opportunity to file exceptions and replies as part of the administrative record.

The State Board for Educator Certification, ("Board" or "SBEC"), after review and consideration of the Proposal for Decision, as well as the exceptions and replies filed, if any, adopts the Findings of Fact Nos. 1 through 33 and Conclusions of Law Nos. 1 through 6 in the Proposal for Decision, as if fully set out herein. The Board modifies and adopts Conclusions of Law Nos. 7 and 8, as set out below, and adds Conclusion of Law 9. All proposed Findings of Fact and Conclusions of Law not specifically adopted herein are hereby denied.

Respondent, a male coach, engaged in conduct which exceeds the bounds of the proper educator-student relationship during the spring semester of 2008 by failing to follow district protocol and send V.S. to the trainer for her ongoing injury, (Findings of Fact 11 and 14); by rubbing down and/or massaging V.S., (Findings of Fact 18 and 20); by treating V.S.'s injury himself with stretching, ice baths, and whirlpools, (Finding of Fact 18); by allowing V.S. to use the Jacuzzi in the master bedroom of his home while no one else was present, (Findings of Fact 22 and 23); and by engaging in approximately 480 phone calls with V.S. during a 4 month period, with over 80 of those calls being placed after 10:00 p.m. (Finding of Fact 26).

MONTALVO V. SBEC
0067

Conclusion of Law 7:

Based on Findings of Fact 11, 14, 18, 20, 22, 23 and 26, Respondent exceeded the bounds of the proper educator-student relationship and is a person unworthy to instruct or supervise the youth of this state.

Conclusion of Law 8:

SBEC is authorized to take disciplinary action against Respondent's Texas Educator Certificate.

Conclusion of Law 9:

Respondent's educator certificate should be sanctioned.

These additions and modifications are permissible pursuant to Texas Government Code § 2001.058(e) and are necessary because the Administrative Law Judge failed to appropriately interpret and apply SBEC policies and rules. *See* 34 TexReg 5421-22, *Marrs v. Matthews*, 270 S.W. 586 (1925), 19 Tex. Admin. Code § 249.15(b)(2).

Protecting the safety and welfare of Texas schoolchildren and school personnel is a primary purpose of the SBEC. A certified educator holds a unique position of public trust, and therefore, the conduct of an educator must be held to the highest standard.

The moral fitness of an educator must be determined from an examination of all relevant conduct and is not limited to conduct that constitutes a criminal violation or results in a criminal conviction. The responsibility and discretion to make this weighty determination is vested in the SBEC.

Mr. Montalvo held a trusted position of authority that provided him a unique opportunity to exploit vulnerable female athletes. Educators must clearly understand the boundaries of the educator-student relationship that they are trusted not to cross. The SBEC considers any violation of that trust to be conduct that may result in permanent revocation of an educator's certificate.

Allowing a female student to use the jacuzzi in the master bathroom of his home while no one else is present, calling a student over 480 times in the late evening over a four month period, and

a male coach giving a female athlete rubdowns and ice baths, failing to follow district protocol to send an injured athlete to the trainer is conduct that the SBEC considers to cross the bounds of the appropriate student-teacher relationship and is sanctionable conduct.

Respondent's actions crossed the bounds of an appropriate educator-student relationship and show that he is not presently worthy to hold a Texas educator certificate.

NOW, THEREFORE, IT IS ORDERED by the Board pursuant to the Texas Education Code Sections 21.031 and 21.041(b)(7) and the Board's rules promulgated in accordance with these statutes that Respondent **ERASMO MONTALVO, JR.'S** Texas Educator Certificate Number XXX-XX-66-13 is hereby _Revoked_.

On behalf of the State Board for Educator Certification:

_____        _8- 10-12_
BONNY L. CAIN, Ed.D.                          DATE

*Note: Pursuant to Board Order No. 990705DP1 issued under 19 Tex. Admin. Code § 249.7(a), the presiding officer of the State Board for Educator Certification may sign an order on behalf of the majority of members making the final decision on a case.*

CASE NO. 03-13-00370-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN

STATE BOARD FOR EDUCATOR CERTIFICATION,
*Appellant,*

v.

ERASMO MONTALVO,
*Appellee.*

On Appeal from the 200th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-12-002991; Before the Honorable Tim Sulak

APPELLANT'S REPLY BRIEF

# APPENDIX B



TEXAS ADMINISTRATIVE CODE

*** ARCHIVE DATA ***

*** THIS DOCUMENT REFLECTS ALL RULES IN EFFECT AS OF DECEMBER 31, 2008 ***

TITLE 19. EDUCATION
PART 7. STATE BOARD FOR EDUCATOR CERTIFICATION
CHAPTER 249. DISCIPLINARY PROCEEDINGS, SANCTIONS, AND CONTESTED CASES
SUBCHAPTER A. GENERAL PROVISIONS

19 TAC § 249.5 (2008)

§ 249.5. Purpose

The purpose of this chapter is:

(1) to protect the safety and welfare of Texas schoolchildren and school personnel;

(2) to ensure educators and applicants are morally fit and worthy to instruct or to supervise the youth of the state;

(3) to regulate and to enforce the standards of conduct of educators and applicants;

(4) to provide for disciplinary proceedings in conformity with the Texas Government Code, Chapter 2001, and the rules of practice and procedure of the State Office of Administrative Hearings;

(5) to enforce an educators' code of ethics;

(6) to fairly and efficiently resolve disciplinary proceedings at the least expense possible to the parties and the state;

(7) to promote the development of legal precedents through State Board for Educator Certification (SBEC) decisions to the end that disciplinary proceedings may be justly resolved; and

(8) to provide for regulation and general administration pursuant to the SBEC's enabling statutes.

SOURCE: The provisions of this § 249.5 adopted to be effective March 31, 1999, 24 TexReg 2304; amended to be effective December 16, 2007, 32 TexReg 9112

CASE NO. 03-13-00370-CV

# IN THE COURT OF APPEALS
# FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN

**STATE BOARD FOR EDUCATOR CERTIFICATION,**
*Appellant,*

v.

**ERASMO MONTALVO,**
*Appellee.*

On Appeal from the 200th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-12-002991; Before the Honorable Tim Sulak

**APPELLANT'S REPLY BRIEF**

# APPENDIX  C

# SBEC Disciplinary Policy and Mission Statement

**DISCIPLINARY POLICY GUIDELINES**

As provided in 19 Tex. Admin. Code (TAC) § 249.5, the primary purposes the State Board for Educator Certification (SBEC) seeks to achieve in educator disciplinary matters are to:

(1) protect the safety and welfare of Texas schoolchildren and school personnel;
(2) ensure educators and applicants are morally fit and worthy to instruct or to supervise the youth of the state; and
(3) fairly and efficiently resolve educator disciplinary proceedings.

The SBEC's focus on the safety and welfare of students is also reflected in the SBEC Mission Statement, Core Principles, and Goals that were adopted on February 6, 2009.

Without diminishing in any way the SBEC 19 TAC Chapter 249 procedural and substantive rights of educators to contest allegations of educator misconduct, it is the policy of the SBEC to fully investigate such allegations and, if those allegations are found to have merit, to ensure that any sanction that is imposed furthers these purposes.

A certified educator holds a unique position of public trust with almost unparalleled access to the hearts and minds of impressionable students. Therefore, the conduct of an educator must be held to the highest standard. Because SBEC sanctions are imposed for reasons of public policy, and are not penal in nature, criminal procedural and punishment standards are not appropriate to educator discipline proceedings.

*General Principles:*

1. Because the SBEC's primary duty is to safeguard the interests of Texas students, educator certification must be considered a privilege and not a right.
2. SBEC disciplinary sanctions are based on educator conduct that is proved by a preponderance of the evidence, without regard to whether there has

been a criminal conviction, deferred adjudication or other type of community supervision, an indictment, or even an arrest. Under the Educators' Code of Ethics, an educator may be sanctioned for conduct underlying a criminal conviction even if the crime is not subject to sanction under the Texas Occupations Code, Chapter 53. An educator may also be sanctioned for conduct underlying a criminal conviction even if the conduct is not specifically listed in 19 TAC § 249.16, as long as the conduct renders the educator unworthy to instruct.

3. Because the SBEC recognizes that an educator's good moral character, as defined in 19 TAC § 249.3, constitutes the essence of the role model that the educator represents to students both inside and outside the classroom, criminal law, 19 TAC Chapter 247, the Educator's Code of Ethics, and 19 TAC Chapter 249, providing for educator disciplinary proceedings, are merely a minimum base line standard for educator conduct. Active community supervision, as well as conduct that indicates dishonesty, untruthfulness, habitual impairment through drugs or alcohol, abuse or neglect of students and minors, including the educator's own children, or reckless endangerment of the safety of others, may demonstrate that the person lacks good moral character, is a negative role model to students, and does not possess the moral fitness necessary to be a certified educator.

4. "Unworthy to instruct or to supervise the youth of this state," which serves as a basis for sanctions under 19 TAC § 249.15(b) (2), is a broad concept that is not limited to the specific criminal convictions that are described in Texas Education Code (TEC) §§ 21.058 and 21.060. The SBEC 19 TAC § 249.3(45) definition of "the determination that a person is unfit to hold a certificate under the TEC, Chapter 21, Subchapter B, or to be allowed on a school campus under the auspices of an educator preparation program" predates the adoption of TEC §§ 21.058 and 21.060, and is based upon the TEC, Chapter 21, Subchapter B grant of authority to the SBEC to "regulate and oversee all aspects of the certification, continuing education, and standards of conduct of public school educators." As a Texas Court of Civil Appeals ruled in the seminal case of Marrs v. Matthews, 270 S.W. 586 (1925), "unworthy to instruct" "means the lack of 'worth'; the absence of those moral and mental qualities which are required to enable one to render the service essential to the accomplishment of the object which the law has in view." Therefore, the moral fitness of a person to instruct the youth of this state must be determined from an examination of all relevant conduct, is not limited to conduct that occurs while performing the duties of a professional educator, and is not limited to conduct that constitutes a criminal violation or results in a criminal conviction.

5. Educators have positions of authority, have extensive access to students when no other adults (or even other students, in some cases) are present, and have access to confidential information that could provide a unique opportunity to exploit student vulnerabilities. Therefore, educators must clearly understand the boundaries of the educator-student relationship that they are trusted not to cross. The SBEC considers any violation of that trust, such as soliciting or engaging in a romantic or sexual relationship with any student or minor, to be conduct that may result in permanent revocation of an educator's certificate.

6. The SBEC recognizes and considers evidence of rehabilitation with regard to educator conduct that could result in sanction, denial of a certification application, or denial of an application for reinstatement of a certificate, but must also consider the nature and seriousness of prior conduct, the potential danger the conduct poses to the health and welfare of students, the effect of the prior conduct upon any victims of the conduct, whether sufficient time has passed and sufficient evidence is presented to demonstrate that the educator or applicant has been rehabilitated from the prior conduct, and the effect of the conduct upon the educator's good moral character and ability to be a proper role model for students.

## Mission Statement *(Back to top)*

Ensure the highest level of educator preparation to promote student achievement and to ensure the safety and welfare of Texas school children
*Adopted February 6, 2009*

CASE NO. 03-13-00370-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN

STATE BOARD FOR EDUCATOR CERTIFICATION,
*Appellant*,

v.

ERASMO MONTALVO,
*Appellee*.

On Appeal from the 200th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-12-002991; Before the Honorable Tim Sulak

APPELLANT'S REPLY BRIEF

# APPENDIX D

physical or mental health, constituted mistreatment or neglect, or by themselves amounted to solicitation or engagement in a sexual or romantic relationship. Nor would such remarks, by themselves, have indicated that Mr. Montalvo is unworthy to instruct or supervise youth. It would have been wise for Mr. Montalvo to have referred V.S. to a counselor instead of trying to address her needs himself, but that is a different matter, and one not pled in this case. Mr. Montalvo's telephone calls with V.S. did not violate the cited Code of Ethics provisions and should not subject him to sanction.

### 5. Student Use of Mr. Montalvo's Jacuzzi

It is undisputed that Mr. Montalvo allowed students, including V.S., to use his Jacuzzi. While there is insufficient evidence to support a determination that Mr. Montalvo sexually assaulted V.S. while she was in his home to use the Jacuzzi, Mr. Montalvo unquestionably exercised bad judgment in opening his master bath to students, and especially to one female student alone – even if Mr. Montalvo's wife was at home at the time. However, such a poor decision did not violate the cited Code of Ethics provisions by adversely affecting students, mistreating or neglecting them, or constituting solicitation or engagement in a sexual or romantic relationship. Nor did this questionable decision, by itself, mean that Mr. Montalvo is unworthy to instruct or supervise youth.

### 6. Summary and Recommendation

Staff has not proven its allegations by a preponderance of the evidence. Therefore, the ALJ recommends no sanction in this case.

## III. FINDINGS OF FACT

1. Erasmo Montalvo, Jr., holds a Texas Educator Certificate issued by the State Board for Educator Certification (SBEC). The certificate was in full force and effect at all times material and relevant to this action.

2. On August 4, 2011, the staff (Staff) of the Texas Education Agency (TEA) Educator Certification and Standards Division, on behalf of SBEC, sent a notice of hearing and

MONTALVO V. SBEC
0061

original petition to Mr. Montalvo proposing revocation of the certificate referred to in Finding of Fact No. 1.

3. The notice of hearing contained a statement of the time, place, and nature of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and a short, plain statement of the matters asserted.

4. The hearing was held January 9-12, 2012, before ALJ Shannon Kilgore at the State Office of Administrative Hearings (SOAH) in the William P. Clements Building, 300 West 15th Street, Fourth Floor, Austin, Texas. Staff was represented by attorneys Richard J. Ybarra and Merle Hoffman Dover. Mr. Montalvo appeared and was represented by attorneys Mark Robinett and Corey Tanner. The record closed on March 9, 2012, with the parties' submission of reply briefs.

5. In 2008, Mr. Montalvo was a track and field coach at the Rio Grande City High School (HS), part of the Rio Grande City Consolidated Independent School District (CISD). He was also the physical education coach at a CISD elementary school.

6. That same year, Student 1 (also referred to as "V.S."), a female senior under the age of 18, was on the high school track team coached by Mr. Montalvo.

7. Student 1 attended a track meet in Donna on March 1, 2008.

8. While at the Donna meet, V.S. met with a college recruiter and was offered a track and field scholarship to attend college in Corpus Christi the following year.

9. V.S. injured her hamstring at the Donna track meet and did not compete.

10. V.S. was a star athlete in her senior year, and the hamstring injury early in the season was an emotional blow to her.

11. District protocol required that injured students be sent to the trainer.

12. Assistant Coach Linda Lu told V.S. to go to the trainer.

13. Parents of injured athletes do not have to agree to let their children go to the trainer.

14. V.S. did not visit the trainer about her injury.

15. V.S.'s mother took V.S. to Mexico for shots to treat her injury.

16. There is insufficient evidence to support a finding that Mr. Montalvo prevented or discouraged V.S. from going to the trainer for her injury.

MONTALVO V. SBEC
0062

17. Mr. Montalvo did not allow V.S. to compete in the next three meets following the Donna meet.

18. Following her injury, V.S. underwent stretching, rub downs, ice baths, and whirlpool use under Mr. Montalvo's direction.

19. V.S. gradually began to work out following her injury, and resumed competing in early April 2008.

20. Mr. Montalvo gave V.S., and other students, rub downs.

21. There is insufficient evidence to support a finding that the rub downs were sexual and involved inappropriate touching.

22. On two or three occasions, student athletes visited Mr. Montalvo's home to use his Jacuzzi in the master bath. The athletes wore sports bras or bathing suit tops, and brief "bikers" shorts.

23. On one occasion, V.S. went alone to Mr. Montalvo's house to use the Jacuzzi.

24. There is insufficient evidence to support a finding that Mr. Montalvo sexually abused or assaulted V.S. when she went to use the Jacuzzi.

25. There is insufficient evidence to support a finding that Mr. Montalvo sexually abused or assaulted V.S. in the field house.

26. From February through June 2008, Mr. Montalvo engaged in approximately 480 phone calls with Student 1, with over 80 of the calls placed after 10:00 p.m.

27. The phone calls were about V.S.'s track performance and emotional issues. The calls did not relate to or constitute a sexual or romantic solicitation or relationship between Mr. Montalvo and V.S.

28. There is insufficient evidence to support a finding of any inappropriate touching, or sexual or romantic solicitation or relationship, between Mr. Montalvo and V.S.

29. There is insufficient evidence to support a finding that Mr. Montalvo knowingly treated V.S. in a manner that adversely affected her learning, physical health, mental health, or safety.

30. There is insufficient evidence to support a finding that Mr. Montalvo intentionally, knowingly, or recklessly engaged in physical mistreatment, neglect, or abuse of V.S.

31. V.S. graduated from high school in May 2008 and left for college that August.

MONTALVO V. SBEC
0063

32. At some point during the 2008-2009 academic year, V.S. told a counselor at her college and her family that Mr. Montalvo had sexually assaulted her in the spring of 2008.

33. In 2009, Mr. Montalvo was charged with two counts of second-degree felony improper relationship between educator and student. He was indicted in October 2009, and acquitted of both counts following a jury trial.

## IV. CONCLUSIONS OF LAW

1. SBEC has jurisdiction over this matter. Tex. Educ. Code §21.031.

2. SOAH has jurisdiction over the hearing in this proceeding, including the authority to issue a proposal for decision with proposed findings of fact and conclusions of law. Tex. Gov't Code ch. 2003.

3. Proper and timely notice of the hearing was provided to Mr. Montalvo. Tex. Gov't Code ch. 2001.

4. Staff had the burden of proof.

5. SBEC may take disciplinary action against an educator who has violated the Educator's Code of Ethics or is unworthy to instruct or supervise the youth of this state. 19 Tex. Admin. Code § 249.15(b)(2) and (3).

6. The foregoing Findings of Fact do not support conclusions that Mr. Montalvo violated Standards 3.2, 3.5, or 3.6 of the Educators' Code of Ethics, 19 Tex. Admin. Code § 247.2(b)(3)(B), (E), and (F) [now § 247.2(3)(B), (E), and (F)].

7. The foregoing Findings of Fact do not support a conclusion that Mr. Montalvo is a person unworthy to instruct or supervise the youth of this state.

8. SBEC is not authorized to take disciplinary action against Respondent's Texas Educator Certificate.

SIGNED May 7, 2012.

SHANNON KILGORE
ADMINISTRATIVE LAW JUDGE
STATE OFFICE OF ADMINISTRATIVE HEARINGS

# CASE NO. 03-13-00370-CV

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN

### STATE BOARD FOR EDUCATOR CERTIFICATION,
*Appellant,*

v.

### ERASMO MONTALVO,
*Appellee.*

On Appeal from the 200th Judicial District Court of Travis County, Texas;
Cause No. D-1-GN-12-002991; Before the Honorable Tim Sulak

## APPELLANT'S REPLY BRIEF

# APPENDIX E

CAUSE NO. D-1-GN-12-002991

| | | |
|---|---|---|
| ERASMO MONTALVO, *Plaintiff,* | § § § | IN THE DISTRICT COURT OF |
| v. | § § | TRAVIS COUNTY, TEXAS |
| THE STATE BOARD FOR EDUCATOR CERTIFICATION, *Defendant.* | § § § § | 200TH JUDICIAL DISTRICT |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The State Board for Educator Certification, Defendant, has requested Findings of Fact and Conclusions of Law pursuant to Rule 296 of the Rules of Civil Procedure regarding that part of the Judgment in this case granting Plaintiff's request for a permanent injunction. In accordance with Rule 296, the Court enters the following Findings and Conclusions. To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such. Correspondingly, to the extent that any conclusion of law constitutes a finding of fact, the Court adopts it as such.

## FINDINGS OF FACT

1. Erasmo Montalvo, Plaintiff, has shown by a preponderance of the evidence, that he will be irreparably harmed if a permanent injunction is not issued prohibiting the Defendant State Board for Educator Certification from treating as revoked or revoking his educator certificate based on the facts and allegations relied on by Defendant in SOAH docket No. 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.EC, until the appellate court issues its ruling in any appeal taken by Defendant.

1

8

2. Plaintiff has shown by a preponderance of the evidence that, based on the history of this case, the harm to him is imminent. It is probable that the Defendant will file a Notice of Appeal, claim that its Notice automatically supersedes the injunction, and represent that Plaintiff's educator certificate is revoked during the pendency of the appeal, (which may involve an indefinite extended period of time), during which Plaintiff's ability to obtain employment consistent with his experience, training, and education, would likely be significantly adversely affected.

3. The competing equities favor granting the injunction.

## CONCLUSIONS OF LAW

1. The educator certificate of Erasmo Montalvo, Plaintiff, was wrongfully revoked by Defendant State Board for Educator Certification, because the Board's decision to do so was:

   a. Not supported by substantial evidence;

   b. Arbitrary and capricious; and

   c. Characterized by a clearly unwarranted exercise of discretion.

2. Because the Board's decision was not supported by substantial evidence to the prejudice of the Plaintiff, the Court is authorized to reverse the Board's decision. Gov't Code §2001.174(2)(E).

3. Because the Board's decision was arbitrary and capricious, the Court is authorized to reverse the Board's decision. Gov't Code §2001.174(2)(F).

4. Because the Board's decision was characterized by a clearly unwarranted exercise of discretion, the Court is authorized to reverse the Board's decision. Gov't Code §2001.174(2)(F).

2

5. If Defendant State Board for Educator Certification is not enjoined from treating as revoked or revoking Plaintiff's educator certificate during the pendency of any appeal from the Judgment reversing its action, Plaintiff will suffer harm for which he has no adequate remedy.

6. Under the circumstances of this case, a permanent injunction is appropriate.

7. Rule 24.2(3) of the Texas Rules of Appellate Procedure authorizes the trial court to decline to permit the judgment to be superseded if Plaintiff posts the security ordered by the trial court in accordance with the Rule, if the judgment is not for money or an interest in property.

Signed on the 21ST day of MAY , 2013.

JUDGE TIM SULAK

3